NATIONAL REFINING CO. *v.* BATTE.*

(Division B.    June 9, 1924.)

[100 So. 388.    No. 24164.]

1. NUISANCE.  *Gasoline filling station not nuisance per se.*

   While a public filling station, used to serve automobiles, trucks, etc., with gasoline and oil, is not a nuisance *per se,* still it may be so operated as to be a public or private nuisance, and, if so operated, it may be enjoined to the extent of abating the nuisance.

2. NUISANCE.  *Gasoline filling station held a nuisance.*

   Generally speaking, a person has the right to use his property for any lawful purpose, and a right of action does not arise in favor of another from such use, even though such use may be annoying or cause inconvenience;  but the right to use private property is subject to some limitations, and the precise limits of one's liberty to do as he pleases with his property is difficult to define; but he cannot so use his property as to cause a physical invasion of the property of another person, and the erection of a filling station and driveway thereto in such manner as to invite motor vehicles to enter the filling station over a private way of the owner of the filling station, so as to constantly cause automobile headlights to shine upon and into another's residence, is not such a use as the owner has a right to maintain.

---

*Headnote 1.  Nuisance, 29 Cyc, pp. 1160, 1223, 1174 (1925 Anno);
2.  Nuisances, 29 Cyc, pp. 1159, 1174 (1925 Anno).

APPEAL from chancery court of Hinds county, First District.

HON. V. J. STRICKER, Chancellor.

Action by E. A. Batte against the National Refining Company. From a judgment for plaintiff, defendant appeals. Affirmed

*Green, Green & Potter,* for appellant.

The issuance of an injunction to restrain one from performing a lawful act, or to prevent one in the operation of lawful business on one's own property, is one of the most delicate duties a chancery court has to perform, and a remedy will not be granted unless the invasion of complainant's property rights is clear. *Green* v. *Lake,* 54 Miss 540; *McCutcheon* v. *Blanton,* 59 Miss. 116.

29 Cyc, 1156, lays down the rule that a fair test as to whether a particular act is a nuisance is whether the use of such property is a reasonable one. The text recited in this connection is borne out by many authorities, and we find that the court of appeals of Illinois in *Lambeau* v. *Levinski,* 47 Ill. 656, lays down the rule that so long as the use to which a party puts his property is a reasonable one, he is not committing a nuisance, and an injunction will not lie. See, also *Ladd* v. *Granite State Brick Company,* 68 N. H. 185; *Bowden* v. *Edison Elec. Ill. Co.,* 60 N. Y. Supp. 835, 29 Misc. Rep. 171; *Phillips* v. *Lawrence Brick Company,* 82 Pac. 787; *R. R. Co.* v. *R. R. Co.,* 92 N. E. (Ind.) 989.

Is not the use to which this defendant has placed its property and exercised its right of dominion over this land, a reasonable one? It is necessary that the million or more automobiles throughout the country be filled with gasoline and oil in order that they might operate. A filling station is not a nuisance *per se,* and if one has a right to operate a filling station, if same is not a nuisance in and of itself, then certainly the defendant in this case had a right to locate its filling station at a place where it

would most naturally expect to receive the largest possible patronage.

An owner may make a lawful or reasonable use of his property, although it causes annoyance and discomfort to those in the neighborhood, if such annoyance and discomfort are only slight, and the natural and necessary consequences of the exercise of the owner's rights in the development of his property. When a man moves to the city, he must, of necessity, suffer the annoyance and inconvenience of city life. If he desires the advantages which are to be found therein, he must put up with the attendant discomforts, annoyances, and inconveniences. When he moves to town he cannot expect the same pure air, freedom from noise, or the same privacy he would expect to find in the country. 29 Cyc, 1159. One of the leading cases on this subject from England is that of *St. Helen Smelting Co.* v. *Tipping,* 11 H. L. Case, 642. See, also, *Goss* v. *Coryell,* 126 S. W. 1164; *Miller* v. *Webster City,* 62 N. W. (Iowa) 648; *Gilbert* v. *Showerman,* 23 Mich. 448.

Perhaps, the best statement of this rule is laid down by the appellate division of the supreme court of New York, in the case of *Peck* v. *Newburgh Lt., Heat & Power Company,* 116 N. Y. Supp. 433.

From a careful reading of the bill, we are of the opinion that the court will find that the most that can be said of complainant's contention, is that the defendant in this case has been the cause of some annoyance to him. That the only thing Batte is complaining of is a condition ordinarily incident to city life, is brought home from reading section 9 chapter 116, Laws of 1916, requiring motor cars to have lights. The real complaint of Mr. Batte is with reference to the lights that are thrown upon his house. Can it be said that where the law definitely and positively prescribed the number and kind of lamp that automobiles shall carry after nightfall, defendant's business can be wholly stopped because its patrons comply with the state and city law in this respect?

Filling stations are not nuisances *per se.* If not nuisances *per se,* then a filling station that is being conducted in an ordinary manner in which filling stations are generally conducted, cannot be enjoined as a nuisance. *Julian* v. *Golden Rule Oil Co.,* 212 Pac. 884; *Hanes* v. *Carolina Cadillac Co.,* 97 S. E. 163; *Great Northern Refining Company* v. *Lutz* (Ky.), 227 S. W. 795; *Shuman* v. *Livingston,* 128 N. Y. 581.

This being so, then, unless complainant has alleged that this particular station is carried on in some manner different from that in which filling stations are usually and customarily operated, it follows that this station is not a nuisance, because if a filling station as usually and customarily carried on is a nuisance, it is originally a nuisance *per se.* On this precise question, see *Morris* v. *Roberson,* 127 S. W. (Ky.) 481. There are two grounds here upon which complainant states that the injunctions should be issued, and these are: (1) That the automobiles patronizing defendant's station produce a large amount of noise, and (2) that the headlights of these automobiles throw out a glare. Certainly noise is to be expected from all automobiles when they start, and certainly this is one of the incidents of all filling stations, and defendant's station, in this respect, is no different from that of any other filling station. The same is certainly true with respect to the lights from the patrons' cars. It then follows that if defendant's filling station is operated as filling stations ordinarily are, and a nuisance is created thereby, the filling station is in itself a nuisance, and we have found that such is not the case. This precise question was passed upon by the supreme court of Iowa in *Mitchell, et al.,* v. *Flynn Dairy Company,* 151 N. W. 434, in which a bill for injunction was filed against the milk company, complaint being made of the noise in loading and unloading milk by farmers who brought same to the defendant company's factory, and sold it, and also of the odor of the offal of the horses of these farmers. The evidence showed that a large num-

ber of farmers daily came to defendant's factory bringing milk for sale to the defendant. In disposing of this feature, the supreme court of Iowa said: "We think this defendant is not chargeable with the conduct of these persons. They alone were chargeable with such misconduct." Thus we find that in the eyes of the law, no act committed by the defendant caused complainant any annoyance or inconvenience, but that all the acts complained of were committed by the public, and, as laid down by the supreme court of Iowa, this defendant is not chargeable with the conduct of these persons, and they alone are so chargeable with such misconduct.

*Alexander & Alexander,* for appellee.

The controlling issues involved herein can be stated in a single sentence. Does the operation of the business of this particular defendant (appellant) constitute a nuisance to this particular complainant (appellee)? The "business" of the defendant must be considered in terms of its general character not only but also in its location and especially the necessary incidents of its operation. The word "nuisance" is not susceptible of exact definition. Illustrative examples of judicial description are as follows:

A "nuisance" may be anything which essentially interferes with the enjoyment of life or property. *Murden* v. *Commissioners of Town of Lewes,* 96 So. 506, 6 Boyce, 48. A "nuisance" is anything that worketh hurt, inconvenience or damage to another. *Jones* v. *F. S. Royster Guano Co.,* 65 S. E. 361, 6 Ga. App. 506.

A thing may or may not be a nuisance according to the manner in which it is used; the situation in which it is placed, or the time it has been carried on without complaint, when measured by the mind and taste of the average citizen. *Densmore* v. *Evergreen Camp No. 147, Woodmen of the World,* 112 Pac. 255, 61 Wash. 230, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912 B, 1206.

In determining whether a lawful business is a nuisance, locality must be considered; for a business proper in a business neighborhood may be a nuisance when carried on in a residential district. *Hall* v. *Carter,* 157 S. W. 461.

A business may become a nuisance, where it is not conducted with due regard to the rights of surrounding property owners, and renders the enjoyment of their property impossible. *Nowak* v. *Baier,* 77 A. 1062, 78 N. J. Eq. 112.

We do not care to enter a discussion as to whether filling stations are *per se* nuisances. The complainant's bill is predicated rather upon the manner of operation of this particular filling station and its effect upon him.

It is needless to attempt to measure the area of definitions or illustrations that are circumscribed by the word "nuisance."

A business lawful in itself may be a nuisance by reason of the manner in which it is conducted. 3 A. L. R. 310; 29 Cyc. 1160; note to 11 A. L. R. 1401; *Nowak* v. *Baier,* 77 A. 1062; and *Ft. Smith* v. *Hide,* 258 S. W. 724.

A lawful business may be a nuisance by reason of the particular locality in which it is conducted. 29 Cyc. 1157, 1160; *Hall* v. *Carter,* 157 S. W. 461.

A business which may be a nuisance when operated in the day time, may become so when its operations are continued into the night. 29 Cyc. 1160, note 60; *McCann* v. *Strong,* 97 Wis. 551, 72 N. W. 1117; *People* v. *Hess,* 179 N. Y. Supp. 734; and *Epps* v. *Ellison,* 200 Pac. 160.

Appellants' first contention is that the "defendant is engaged in a lawful enterprise and is using and exercising its dominion over its property in a reasonable manner. Our reply is simple but we believe sufficient; the question of the lawfulness of the enterprise is not directly involved here and would not be indirectly involved here and would not in any event be controlling. It is not for the appellant itself to adjudge the reasonableness of its operations; the complainant's bill alleged the contrary and we are before this court on demurrer.

Appellant's demurrer admits facts showing that appellee's home has been rendered practically uninhabitable at night and his peace, security, and comfort wellnigh destroyed.

II. Counsel next contend that ''none of the acts complained of were committed by the defendant, its servants or agents, but were committed by other persons.'' The contention would be ingenious if less patently absurd.

Thus the proprietor of a glue emporium might disclaim all responsibility for assault upon the sensibilities of the neighborhood by the fumes from his boiling pots, on the ground that while he was perchance held fast in his own chair by a functioning sample of his own product, the characteristic odors thereof had been forced upon the attention of remote townspeople through the unsolicited agency of an officious southern breeze. The law is not thus written. His concern must be both manufactory and olfactory.

By the same token, the proprietor of a dance hall may dodge amenability to forceful restraint on the ground that the feet and cards that are shuffled are not his own, and that the dying groans of mutilated music and all the weird cacophonies of jazzed harmonies emanate alone from those third or thirty persons who have tendered cash and taken charge. He himself may be one whose earlier training left undeveloped the ability to trip a toe that was either light or fantastic; whose infatuation for Terpsichore had collapsed along with the falling of his arches; whose early habits of living has put nothing upon his brain but a clot; who considers the modern dance not so much in terms of supple art, as brittle arteries; who had been admonished by the potentialities of high blood-pressure, to be content with a first hand familiarity with the syncopations of St. Vitus.

With equal sophistry would the manager of a gasoline filling station try to shield himself behind the reasoning that his only connection with the nuisance occasioned by

the headlights of the cars of his customers is the fact that he invited them there, provided the means by which their lights could be directed upon and into the home of a third person; so constructed his station that his patrons could not be served except at the expense of the comfort of others; and finally that all 'he did was to fill the cars with oil and gas—and his thoughtless patrons' did the damage. The business of a filling station is to "fill" cars. If it can carry on such business only when such cars are in position at its tanks, then the presence of these cars is a part of its business, and when such cars must be so placed as to constitute and become detructive of the peace, comfort, rest and enjoyment of his home, then the conclusion is inevitable that the business is a nuisance. If it is a nuisance it can be abated.

Indeed, in *Davis* v. *Niagara Falls Tower, etc.,* 171 N. Y. 336, 64 N. E. 4, the owner of a building was held liable for injuries that were occasioned by the falling of ice from the roof upon third persons. It would have been vain for him to contend that he was not responsible for the forming of the ice, its subsequent thawing loose and its ultimate precipitation to the ground.

III. Appellant next contends that "the annoyance that complainant complains of is an incident of city life, and is not such an invasion of his property right as to give him a cause of action." We presume the analogy is to high taxes and collars, duplex apartments, traffic rules, amateur theatricals, reception lines, pasteurized milk, midnight saxaphone practice, after-dinner speeches, and the whole catalog of restrictions upon the liberties of those who formerly inhabited the great open spaces. But is a home to be included among the things sacrificed for the privilege of paying street taxes? In the name of public necessity counsel would destroy the most fundamental rights of the citizen. If the "hum and throb" of the city's life is discordant, let him remove himself a pace. What matters it that in departing he leaves behind him his home on whose modest walls hang the pic-

tures of the framers of our constitution and perchance
a copy of the historic document itself. Such loss is
*"damnum absque injuria."* He is a martyr to Progress.
Business is the thing, they say; the home is but an in-
cident. As the householder under the threatening ad-
vance of Progress, husbands his household gods and
quits his threshold, he goes forth not silently—as the
Arabs—for there follows him the blare of auto horns,
the glare of auto lights and the conglomerate "throb and
hum" of the city. It comes to his ears as the sneering
and triumphant shout of the false god, Progress. Yet
above all this is the chorus of those, whose voices are lift-
ed in a blatant endeavor to out-yell the voice of their con-
science. And their refrain is *"Damnum absque injuria,"*
*damnum absque injuria."* Close upon the feet of the de-
parting householder comes the vanguard of the retinue
of King Gasoline. The wheels of his chariot are milled
upon the edge; their axles pierce through and distort the
visage of the Goddess of Liberty. His credentials are
bags of jangling coins whose imprint bears the image of
the buffalo and the indian—both classed as lawful prey
to an advancing "civilization." His royal train is filled
with those whose test for altruism shows negative. They
are alert with a consuming zeal for Number One. Their
marching song has the air and refinement of our Na-
tional Anthem; its words have the spirit of National Re-
fining: "Our business 'tis of thee—wide range of lib-
erties, of these we sing. Land where our fathers died,
land with a dying pride, from every possible side let
car gongs ring.

"Let odors swell the breeze and reek from all the
trees—sweet incense strong. Let mortals, tired, awake,
and all that breathe partake, let horns their silence
break, the sound prolong. . . . Long may our nights
be bright with our unholy light—Protect us by thy might,
Oh great demurrer." The figure would be facetious if
it were not built about the solid core of justifying truth.

The citizen is led to believe that he must put up with it or shut up in the face of it. He must train himself to grin and bear it, and the bother of it is that the former is optional, the latter compulsory. Is wealth and progress the supreme law? In our mad endeavor to clamber upward through the medium of modern sky-scrapers, we soon reach heights from which we cannot read what the courts have graven upon the corner stones—"*Salus populi suprema lex est.*" The welfare of the people— even of the humblest individual—that indeed is the supreme consideration.

The following cases will illustrate how the courts have applied the rule contended for by us.

"The holding of a regatta with aquatic sports on a reservoir, thereby creating a concourse of persons who trespass upon and injure adjoining property, has been enjoined as a nuisance." *Bostick* v. *North Staffordshire R. Co.,* 5 De G. & Sm. 584, 2 Jur. (N. S.) 248. The most recent judicial utterance on this subject is the late case of *Phelps* v. *Winch,* 28 A. L. R. 1169. This case is directly in point for it deals with the lights and noise of automobiles—the liability of the proprietor for the nuisance caused by his patrons, and the futility of the defense that the business as a general proposition is not unlawful. The fact that few nuisance cases have involved the annoyance of light cannot change fundamental principles. People feel, enjoy, and suffer through the senses. A multitude of cases classify as nuisances those operations or acts which injuriously affect the sense of touch as by producing heat, soot, vibration (cf. *King* v. *Railway,* 88 Miss. 456). Hearing, by noise; Smell by gases and vapors (See *Yazoo Ry.* v. *Saunders,* 87 Miss. 607, where the effect was to render habitation and enjoyment of the home difficult. Sight, by billboards, excessive light, etc. Even the sensibilities may be affected by indecent exhibition or display, or improper persons or language. Added to the injury to the senses of appellee is the injury to his property.

Argued orally by *Chalmers Potter,* for appellant, and *Julian Alexander,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Batte, filed a bill in the chancery court against the appellant, alleging that the complainant had resided for many years in quiet and peace at No. 915 Grand avenue, Jackson, Miss.; that his home and residence fronts northwest, and is just opposite the point of intersection of Grand avenue with West Capitol street in said city; that the two streets intersect at a sharp angle, this forming a triangular tract of land just across Grand avenue, in front of complainant's house; that the defendant has acquired and is using as a public oil and gasoline filling station this triangular lot; that the erection and use of this filling station has caused the continuous presence of automobiles and auto trucks in and about the complainant's residence, with their attendant noise and confusion and annoyance, to the complainant's injury and damage; that the defendant has built and provided a driveway or entrance to said filling station, so as to provide entrance both from Capitol street and from Grand avenue across and through said triangular lot; that said driveway is so placed that the headlights from automobiles and trucks, coming into the filling station for gasoline and oil, at the invitation and solicitation of the defendant, come into said filling station from Capitol street, and at night or in the evening throw their lights directly upon and into the residence of complainant; that Capitol street is the main and principal thoroughfare for automobiles running east and west in said city, and that most of the automobiles which enter said filling station do so from Capitol street; that the lights and glare from such automobiles so using the defendant's filling station and facilities are after dark directed almost continually upon complainant's residence,

to the extent that he is unable to sit or rest upon the front porch of his house with any comfort or pleasure; that said lights or glare from such automobiles penetrate into the interior of said house, and so render it difficult to sleep or to maintain any privacy therein, and have rendered it practically valueless as a home, to complainant's great damage; that the conditions above described and complained of were caused directly by and at the instance of the defendant in the use of said property as a filling station, and that the injuries complained of necessarily follow from such use or adaptation by the defendant of said property, and peculiar to and specially suffered by the complainant, and are of a kind and degree distinct from and not sustained or suffered by the general public; that prior to the erection of said filling station complainant, being apprised of the plans of the defendant, protested both to the city of Jackson and to the defendant against the erection of said filling station, but that nevertheless, and with full knowledge of such protest, and in willful disregard thereof, said defendant erected said filling station, and thereby caused the injuries and nuisance hereinbefore set out; that the acts of said defendant constitute a continuous nuisance to the complainant, and have caused and will continue to cause irreparable injury and loss to said complainant; that complainant is without adequate remedy at law in the premises.

The bill prays for an injunction against the defendant, to restrain and enjoin it from maintaining said filling station in the manner set out above, and from doing and permitting the injuries and nuisance above described, and prays for a temporary injunction, and that upon final hearing that said temporary injunction be made perpetual, and for an assessment of damages in the sum of two thousand five hundred dollars.

This bill was demurred to on the grounds: First, that there was no equity on the face of the bill; second, that it appears affirmatively from the bill that the defendant

was in the possession of its property for lawful purposes, and that no cause of action accrues therefrom; third, that the bill fails to aver such invasion of the complainant's property as would entitle him to relief under the law; that the defendant is in no way responsible for the use made of the property owned by it, so long as said use is lawful, and that to grant to complainant the relief sought would be to deprive the defendant of its property without due process of law.  The demurrer was overruled, and an appeal granted to this court to settle the principles.

It is argued by the appellant that the damages suffered by the defendant are merely such as result from city life, and especially under modern conditions; that its business as a filling station is not a nuisance *per se*, and therefore cannot be controlled by the court.  The damages alleged in complainant's bill are not merely such as result from city life and the use of the streets by automobiles, but under the allegations of the bill are the result of an invasion of complainant's premises by reason of throwing the lights and glare from the headlights of automobiles upon and into his house in a different degree and in a different manner from what we would suffer from the use of the streets in the ordinary and customary use thereof by automobiles and other vehicles.  The bill alleges that the driveway of the defendant's filling station is constructed across the lot of defendant from street to street, so that automobiles and auto trucks may approach and enter the filling station in a different way from that in which the filling station could be approached by the ordinary use of the streets; the allegation being that the driveway is so constructed that automobiles, on entering the filling station from Capitol street and while being served by the filling station, throw their lights directly upon and in to complainant's residence.

The bill avers that the residence was situated where it is, and enjoyed as a home by the complainant, for many years prior to the erection of defendant's filling

station, and that prior to the erection of said filling station complainant protested against the erection of same across the street in front of his residence. While it is true that a filling station is not a nuisance *per se,* still it may constitute such a use or invasion of another's property as to cause serious injury, or in some cases almost a complete destruction of a residence as a home and place for rest and sleep.

The right to use one's property, whether in a city or not, is not without reasonable limitations. The precise limits of one's liberty to do as he pleases with his own property are often difficult to define. Property may not be used to the extent of destroying the value of other people's property, who have the same right to the use and enjoyment of property as any other owner has. A person living in a city, of course, for the benefits derived from being so situated, must give up some of his rights, and must suffer such inconveniences as only affect the public at large. It is manifest that to construct an approach or entrance across a lot from street to street may occasion an injury. If such approach were laid out as a public street, the damages resulting to the adjacent property owners would be included in a condemnation proceeding, and the owner would be compensated for such special damage. The opening of such a way, and inviting the public to travel over and upon such right of way, by the private owner of the soil, would also inflict the same damage as if laid out by the public. Of course, a property owner has a right to engage in commerce and to use his property for that purpose; but in doing so he must so conduct the business as not to interfere unreasonably with the rights of the adjacent property owners. The filling station probably could be operated without the use of the driveway, and it may be that the public could be served by the filling station in such way as would cause the property owner no additional inconvenience by the use of the streets, or by laying out the driveway in such way as to cause no additional injury,

It is well known that a light from an automobile, when thrown directly into the face and eyes of a person, will cause annoyance, and physical injury if persisted in, and, if the statements of the bill are true, it would be impossible to sit upon complainant's front porch, and use the porch as a place of rest or pleasure, while such lights were being constantly thrown directly thereon. It is not a case of an owner being in the possession of his own property and using his own property, but it is a case where, in order to use his own property for personal advantage, he causes a physical invasion of the adjacent property, and this he has no right to do. It may be that conditions may warrant the construction of these filling stations at places in a city given over principally to business uses, even though it might result in direct injury to another property owner in the use of his property; but it is clear to our mind that a place may not be so used where the situation surrounding it at the time of its construction does not bring it within the rule of a business district.

Again, it may not be a necessity to keep a filling station open during the hours of the night when automobiles are operated, or during the hours when headlights are necessary, or it may be that the automobiles could be required to turn off the headlights on entering the driveway of the filling station or prior thereto, so as not to cause annoyance and discomfort to the complainant. Whether these things can be done in a reasonable manner, and without annoyance or injury to the complainant, we cannot decide from the allegations of the bill, and if there be any situation which would warrant the use of the defendant's property for the purpose for which it is used, without undue injury to the complainant, that may arise upon plea or answer.

It is not necessary for a business to be a nuisance *per se* for it to be restrained as an unlawful interference with the right of another person, for it may be conducted so as to become a nuisance, owing to the manner in which

it is conducted, and if business is so operated that it
becomes a nuisance, not *per se,* but from the manner in
which it is operated, it may be restrained or abated to
the extent that it is unlawfully operated. In *King* v.
*Vicksburg Railroad & Light Co.,* 88 Miss. 456, 42 So.
204, 7 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749, the
court recognized the principles involved in the present
suit—that people, although they reside in a city, are
entitled to enjoy their homes free from damage resulting
from physical invasion of their property sufficiently to
depreciate the value of the property and render its occu-
pation uncomfortable. In that case the nuisance was
by smoke, soot, and cinders growing out of the use of lo-
comotives near the premises, brought about by the rail-
way company constructing improvements on its prop-
erty after the establishment of the home, and the court
held that a corporation cannot claim exemption from
liability for a nuisance maintained by it in the operation
of an electric power plant, whereby property is damaged
because it is operated under a charter giving it a right
to do business.

In *Hamilton Corporation* v. *Julian,* 130 Md. 597, 101
Atl. 558, 7 A. L. R. 746, the supreme court of Maryland
held that one residing in the residence district of a mu-
nicipality may enjoin the threatened erection of a bowl-
ing alley and moving picture theater adjoining his resi-
dence, if the act complained of will, in the judgment of
reasonable men, be naturally productive of actual phys-
ical discomfort to persons of ordinary sensibilities and
of ordinary tastes and habits, and, in view of all the
circumstances of the case, will be in derogation of the
rights of the complainant. At page 749 et seq., 7 A. L.
R., there is a case-note treating in detail and setting forth
numerous authorities on the right to enjoin threatened
or anticipated nuisance. Numerous other authorities are
cited in the brief in the present case.

We think it is clear, from the allegations of the bill
that the complainant has suffered damages, and will con-

tinue to suffer damage, separate and apart from such as result to the general public from the use of the streets by automobiles, and from the nuisance incident to the headlights by such automobiles in the use of the street themselves. The bill states a case where the damage is direct, special, and serious to the particular complainant, distinct from that suffered by the public in general.

The court below having overruled the demurrer, the judgment will be affirmed.

*Affirmed.*