## No. 38,947

CARRIE BUCKMASTER, EDITH HIGGINS, EDWARD HIGGINS, CAD C. MARTIN, MABLE MARTIN, HENRY N. HAWKINS, ADOLINE J. HAWKINS, RAYMOND STERLING, C. S. HOSKINS, LEOLA STERLING, VICTORIA HAWKINS, HOMER M. FERGUSON, MAYME FERGUSON, *Appellees*, v. THE BOURBON COUNTY FAIR ASSOCIATION, a corporation, and THE COMMUNITY ENTERPRISERS, a corporation, *Appellants.*

(256 P. 2d 878)

Opinion filed May 9, 1953.

*Douglas Hudson,* of Fort Scott, argued the cause and *Howard Hudson* and *Douglas G. Hudson,* both of Fort Scott, were with him on the briefs for the appellants.

*Harry C. Blaker,* of Pleasanton, and *W. F. Jackson,* of Fort Scott, were on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin defendants from carrying on auto racing, motorcycle racing and carnivals on ground owned by the Bourbon County Fair Association. The defendants'

demurrer to the petition on the ground it did not state a good cause of action against the defendants was overruled and they have appealed.

Some motions were directed at the original petition. This resulted in the filing of an amended petition. It alleged the plaintiffs were bringing the action for their relief and benefit and on behalf of others who were entitled to like relief; it stated they resided in South Side Park Addition and Adams Addition to Fort Scott and near the Bourbon County Fair Association grounds and the hot-rod race track on those grounds and stated the actual residence of the plaintiffs; that the Bourbon County Fair Association was a Kansas nonprofit corporation authorized to give education in agriculture, animal husbandry and home economics and to have exhibitions and entertainment in connection therewith; that the defendant, The Community Enterprisers, was a Kansas corporation authorized to promote literary, educational, social and advertising matters; that the ground and race track were owned by the Bourbon County Fair Association and leased by it to The Community Enterprisers and the Community Enterprisers arranged with the Fort Scott Bourbon County Racing Association to do auto racing on the fair grounds; that a price was paid by those who attended but plaintiffs did not know who fixed the price paid by them nor how the receipts were divided between the fair association and members of the Community Enterprisers; the plaintiffs stated they did not know who set the dates for the stock-car auto racing or baseball games or arranged with carnivals or motorcycle racing or other activities on the fairgrounds nor what percentage each received, but some admission was charged and receipts were divided amongst defendants; that the land owned in question was purchased in the name of The Bourbon County Fair Association; that in July and August, 1951, at the instance of one Sudsberry and under his direction the racing track was made and built, the poles and lights were bought and placed, but plaintiffs did not know who provided the money; that the building of the race track, running races on it, permitting carnival companies to show on part of the fairgrounds and conducting other games and activities thereon and using the lights did during May and June, 1952, and to the date of filing the petition, make a nuisance to these plaintiffs; that the race track and the approaches thereto were dirty, dusty and in such condition that the homes and buildings owned by these plaintiffs and many others were made unbearable, unclean and dirty and much

damaged; that before the construction and use of the race track and doing other things mentioned thereon the homes of plaintiffs, except when the annual meeting of the fair association was being conducted, were quiet, clean and peaceful day and night, but now the dirt and dust from the race track and its approaches come in clouds to, against and into the homes and other property owned by plaintiffs so that it covered their floors, carpets, rugs, furniture, bedding, inside walls, drapes and pictures, making their homes unbearable and causing ten times as much inside house cleaning as before; that all of this was a nuisance against plaintiffs and many others near this race track; that the peace and quiet and enjoyable use of their homes had been destroyed and the real value of their property reduced one-fourth to one-half in value and the blocking of the roads and streets along and by the racing track and fairgrounds and parking on private property and in driveways was dangerous to the property of plaintiffs in case of fire and destroyed the free use of their property; that noises, loud talking and yelling and using microphones day and night and racing old cars in a reckless and dangerous way, conducting carnivals and other activities on the fairgrounds and race track and maintaining the lights made it impossible to get any real rest and sleep in homes of plaintiffs and were a nuisance to and against the plaintiffs and their property; that the fair association and Community Enterprisers have built, set up, lighted and made ready for use and were then using the race track and approaches thereto for the things mentioned and had helped make and had contributed to the nuisance now being made against plaintiffs.

The prayer of the petition was that defendants be enjoined from carrying on the auto racing, motorcycle racing, carnivals and other activities which might continue the condition and nuisance complained of by plaintiffs and others and that the condition of the race track and the approaches thereto and holding carnivals thereon be changed and so modified that clouds of dirt and dust will not come to and into the homes of plaintiffs and others and these defendants be required and compelled to so change that condition of the race track and approaches that they have peace and quiet in their homes day and night and their property may not be further damaged and plaintiffs have judgment for a reasonable attorney fee and court costs and all further relief in equity to which they are entitled.

Defendants demurred to this amended petition on the grounds that several causes of action were improperly joined, the amended

petition did not state facts sufficient to constitute a cause of action and plaintiffs had no legal capacity to sue. This demurrer was overruled and defendants have appealed.

The specifications of error are that the court erred in overruling the demurrer to the amended petition in that it did not state facts sufficient to constitute a cause of action because it did not show the location of the alleged nuisance or any special or particular damage suffered by plaintiffs other than that suffered by the public in general; that stripped of its conclusions it did not allege that appellants at the time of filing plaintiffs' amended petition had anything to do with or were in any way responsible for the acts described in paragraph 9 of the petition, which were the only allegations of nuisance; that the amended petition did not allege or state facts showing that plaintiffs did not have an adequate remedy at law; that the court erred in overruling defendants' demurrer on the ground that the plaintiffs had no legal capacity to sue because the amended petition did not show any special injury to the plaintiffs or any injury that is not of the same kind as that suffered by the public and said action must be brought by the county attorney or attorney general.

Defendants state they will for the sake of brevity argue their demurrer to the petition on the ground it did not state facts sufficient to constitute a cause of action because it did not show the location of the alleged nuisance or any special or particular damage suffered by the plaintiffs other than that suffered by the public in general and that the court erred in overruling defendants' demurrer on the ground that plaintiffs had no legal capacity to sue because the amended petition did not show any special injury to the plaintiffs or any injury that is not of the same kind as that suffered by the public and that such an action must be brought by the county attorney or the attorney general together for the reason that they both involve the identical question of whether the amended petition alleged a private or public nuisance, if any.

Defendants cite authorities where we have distinguished between a private and a public nuisance. They argue G. S. 1949, 60-1121, provides that an action to enjoin a public nuisance may only be brought in the name of the state. That section provides for the bringing of an action by citizens affected to enjoin the illegal levy of a tax. The last proviso of the section is *"Provided further,* That an injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance." De-

fendants rely upon authorities where we have held that under certain circumstances peculiar to the case being decided the nuisance sought to be enjoined was a public rather than a private one and could be enjoined by the state only in an action brought by the proper officer, either the county attorney of the proper county or the attorney general. We find no case, however, where the mere fact that many people and their property were affected by a condition constituted the condition a public rather than a private nuisance so that an action to enjoin it could only be brought by the state.

At the outset it should be noted a motion to make definite and certain was directed at this petition. Plaintiffs confessed the motion and filed an amended petition. No motions were directed at this amended petition—hence it should be given a liberal construction.

There are allegations that the race track and approaches are so dirty that the homes and buildings of plaintiffs and many others are made unbearable, unclean, dirty and were damaged; there is an allegation dirt and dust came in clouds to, against and into the homes and covered the floors, carpets, rugs, furniture, bedding, inside walls, drapes and pictures, making the homes almost unbearable, making ten times as much cleaning as before the using of the race track and the homes and property of plaintiffs were reduced in value by the acts of the defendants; that the peace and quiet of plaintiffs' homes had been destroyed and the value of their property reduced one-fourth to one-half in value; that parking cars on plaintiffs' property destroyed the free use of it; that noises, loud talking and yelling and using microphones day and night and racing old cars and conducting carnivals and maintaining lights made it impossible for plaintiffs to get any real rest.

When given the liberal construction, to which plaintiffs are entitled, this petition states that ordinarily plaintiffs did not object to the use made of the fairgrounds during the annual meeting of the fair associaion, but that all the defendants together had introduced hot-rod car racing, carnivals, motorcycle racing, erected flood lights not ordinarily found at fairgrounds, all of which created the condition. The petition clearly states that the activities of defendants lowered the value of their property.

In *Leland v. Turner*, 117 Kan. 294, 230 Pac. 1061, we considered an action brought by private citizens to enjoin the maintenance of a funeral home in a residential section of a city. One of the defenses was that the plaintiffs had no right to maintain the action because

the damage suffered by them was not different in kind from that sustained by the general public. We reviewed many authorities and held:

"Private citizens who own and occupy homes in a residential section of a city have an interest so different in character as well as in degree from the general public in the threatened and impending intrusion of an undertaking establishment in close proximity to their homes that they may maintain an action to enjoin such establishment as a private nuisance."

In *King v. American Rock Crusher*, 119 Kan. 618, 240 Pac. 394, thirty-five plaintiffs sued to enjoin the operation of a stone crusher and stone quarry in such a manner that large tracts of explosives caused vibrations damaging houses, homes and the health of plaintiffs and big clouds of dust were created, which settled on, in and about the houses of plaintiffs to their damage and injury. The defendants contended the nuisance, if any, was a public one and could not be enjoined at the suit of any private individual. We held the contention not good and cited many authorities. We said:

"There was evidence in the present case which tended to show that the property of these plaintiffs was damaged by the operations of the defendant. For that reason the plaintiffs had the right to maintain the action."

*Alster v. Allen,* 141 Kan. 661, 42 P. 2d 969, was an action to enjoin the operation of a creamery in such a manner as to constitute it a nuisance to the plaintiffs. It was brought by private parties. The nuisance complained of was that the early morning bustle of trucks and handling of milk cans and loud voices of employees disturbed some of the plaintiffs from sleeping; that the use of a semi-Diesel engine, by popping of its exhaust, and the fumes and disagreeable vapors it emitted frequently permeated the houses of the plaintiffs causing the ground to vibrate, the houses to shake, the dishes to rattle and the beds to shake so that living conditions became unbearable to plaintiffs. The point that this action should have been brought by the state does not appear to have been raised although the opinion states that

"The aggrieved parties at first appealed to the public authorities; and functionaries of the local and state boards of health examined the premises; but as the creamery station was maintained in sanitary fashion there was nothing the health officials could do about it.

"Hence this lawsuit, to enjoin the business as a nuisance."

In any event, we held that the action could be maintained and that the activities complained of constituted a nuisance and could be enjoined.

In *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798, the operation of a sewage disposal plant by the city was held to be such a nuisance that Jeakins could sue for damages on account of it.

The latest case we have on the subject is *Neiman v. Common School District*, 171 Kan. 237, 232 P. 2d 422. That was an action by private individuals against a school district to enjoin it from permitting the use of an athletic field by people not connected with the athletic program of the high school maintained by the defendant school district. The activities complained of were softball playing which caused dust and the use of a public address system to the extent that the plaintiffs were unable to sleep or rest or enjoy the use of their property while the baseball games were being conducted with flood lights. The question of whether the action should have been brought in the name of the state was not raised apparently. However, the trial court granted an injunction, we modified it somewhat, but the effect was, that certain of the activities must be conducted in a manner so as not to constitute a nuisance as to the plaintiffs. It is of interest. We held as follows:

"In an action by nearby residents complaining of softball games on the athletic field of a school district upon the ground that the conduct of the games is a private nuisance as to them, the decision should be made upon matters complained of by plaintiffs which existed at the time the action was filed."

This opinion is authority for the conclusion that every action to enjoin some activities not unlawful in and of themselves on the ground that the activity is a nuisance, either public or private, must be decided upon the facts and circumstances surrounding that particular case. In this connection see *Hofstetter v. Myers*, 170 Kan. 564, 228 P. 2d 522. It must be remembered this opinion is passing on the demurrer to the petition only. What will be developed upon the trial of the case remains to be seen.

The judgment of the trial court is affirmed.