No. 42,298

Marcia Ruth Wilburn, an Incompetent Person, by Roy F. Montgomery, Her Guardian, *Appellee,* v. Boeing Airplane Company, a Corporation, and The Board of County Commissioners of the County of Sedgwick, *Appellants.*

(366 P. 2d 246)

Opinion filed November 10, 1961.

*Robert N. Partridge,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert M. Siefkin, Richard C. Harris* and *Gerald Sawatzky,* all of Wichita, were with him on the brief for the appellant, Boeing Airplane Company.

*Ralph E. Gilchrist, Carl L. Buck* and *Bernard V. Borst,* all of Wichita, were on the brief for the appellant, The Board of County Commissioners of the County of Sedgwick.

*John C. Frank* and *Theodore M. Utchen,* both of Wichita, argued the cause, and *Thomas W. Cunningham, Patrick F. Kelly* and *Fred J. Gasser,* all of Wichita, were with them on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a common-law action against Boeing Airplane Company and the board of county commissioners of Sedgwick county to recover for injuries sustained by plaintiff, an employee of Boeing, when she was struck by an automobile being driven by a third party. The accident occurred while plaintiff was crossing a public county street adjacent to Boeing's plant.

The theory of plaintiff's petition is that the crosswalk in which she was struck was in a dangerous and hazardous condition amounting to a *nuisance,* and that such condition was created and maintained jointly by defendants.

Defendants appeal from an order overruling their joint demurrer to the petition.

The questions involved in the case will develop as the opinion progresses.

We are reluctant to encumber an opinion with lengthy quotations from pleadings. On the other hand, all questions in the case turn upon the construction to be given the material allegations of the petition, and they are of such nature that no attempt to summarize will be undertaken. After alleging the identity of the parties to the action—that Boeing maintains a general office and factory for doing business; that the board of county commissioners is charged with the duty of supervising and maintaining the county highways in a safe condition, and that on the date in question, September 16, 1958, plaintiff, thirty-four years of age, was an employee of Boeing on the second shift from 4:30 p. m. to 11:30 p. m. —the petition alleges:

"3. The defendant, The Boeing Airplane Company, is and at all times material hereto was an industrial corporation, engaged in business for profit. Said Boeing Airplane Company either owns or has under lease numerous large and spacious factory buildings and warehouse facilities located for a distance of approximately one mile on either side of a Sedgwick County road known as South Oliver Street, the supervision and maintenance of which, at all times material hereto, was the obligation of the Board of County Commissioners of Sedgwick County, Kansas. South Oliver Street runs in a northerly and southerly direction and divides the factory grounds of Boeing Airplane Company. At all times of the day and night there is busy vehicular traffic on South Oliver Street. The Boeing Airplane Company employed in excess of 20,000 persons and operated on a 24 hour, 3 shift basis. As a result of such employment, at times of each shift change, there is and was a very heavy congestion of traffic in and out of various parking areas owned, leased or controlled by the defendant, The Boeing Airplane Company, the entrance and exits of said parking areas opening onto said South Oliver Street. Said traffic congestion had existed for a number of years, at the time of each shift change, prior to the time plaintiff received her injuries, as hereinafter alleged. The defendant, The Board of County Commissioners, had actual knowledge of said traffic congestion at time of shift changes. In addition to there being a heavy congestion of motor vehicular traffic entering into and exiting from said various entrances to and exits from said parking areas, there is at the time of each shift change and has been for a number of years prior to the time plaintiff received her injuries, a large number of pedestrians, employees of the defendant, Boeing Airplane Company, crossing east to west and west to east to the various parking areas, furnished by said Boeing Airplane Company for the use of its employees. The defendant, The Board of County Commissioners of Sedgwick County, and the defendant, The Boeing Airplane Company had long prior to the occasion on which plaintiff was injuried installed crosswalks at five places across said South Oliver Street, in the immediate plant or factory area of the defendant Boeing Airplane Company, for the use of the employees of the defendant Boeing Airplane Company, and other persons; said crosswalks being located at other than intersections of roads, streets or highways.

"4. Said crosswalks were installed and maintained by the said Board of County Commissioners and the Boeing Airplane Company. At all times material hereto, Boeing Airplane Company voluntarily took upon itself the public duty of policing, supervising, controlling and directing pedestrian traffic across said South Oliver Street, at each of said crosswalks. The defendant, The Board of County Commissioners at all times material hereto and for a long time prior thereto knew the defendant, Boeing Airplane Company, had undertaken this public function and acquiesced therein and did nothing whatsoever in regards to the regulating, controlling, supervising or directing of pedestrian traffic at any of said crosswalks. In addition to the assumption of the public function of policing, supervising, controlling and directing pedestrian traffic at said crosswalks the defendant, Boeing Airplane Company, voluntarily assumed the public function of policing, supervising, controlling and directing motor vehicular traffic on South Oliver Street and at the entrances and exits of its

various parking areas heretofore described giving ingress and egress onto said South Oliver Street. By reason of said heavily congested motor vehicle and pedestrian traffic entering and leaving the premises of the defendant, Boeing Airplane Company, at times of shift changes, there were created on numerous occasions traffic jams, the occurrence of which was well known to both defendants herein. There is and was a lack of uniformity in the policing, directing, supervision and control of traffic, both at entrances and exits to said various parking areas and at said pedestrian crosswalks in that at the entrance and exits to some of said parking areas and at two or three of said crosswalks, uniformed guards wearing luminous clothing and carrying flashlights, employees of the defendant Boeing Airplane Company, directed the flow of traffic, whereas at one of said crosswalks, in addition to uniformed guards, there was an electric stop-caution-go signal, while at the crosswalk where plaintiff received her injuries, there was at no time material hereto either uniformed guards, nor traffic signals, nor did either of said defendants take any precautions whatsoever to control, direct, police or supervise motor vehicular or pedestrian traffic, so as to provide for the safe passage of pedestrians across said crosswalk. For a long time prior to the plaintiff's accident it was the custom of the Boeing Airplane Company to provide a greater number of guards at crosswalks and at the entrances and exits to various parking areas during the daytime shifts than were provided at the nighttime shifts, although more guards were needed to safeguard pedestrians at nighttime than daytime.

"5. By reason of the failure of defendants to provide any measure whatsoever for the protection of pedestrians crossing at the crosswalk at which plaintiff was injured, the crossing of said South Oliver Street at said crosswalk was extremely hazardous and dangerous and unsafe for pedestrian traffic and was more particularly dangerous, hazardous and unsafe at nighttime in that said crosswalk was neither lighted, nor was oncoming traffic given warning as to the existence of said pedestrian crosswalk by way of luminous warning signs or otherwise. The only warning was a small non-luminous sign bearing the words 'Stop for Pedestrians' located on the East side of said South Oliver Street, immediately South of said crosswalk and in such close proximity thereto as to make it physically impossible for any driver of a motor vehicle, after observing said sign, to stop prior to entering into and over said crosswalk, and which sign by reason of its non-luminous character could not be seen at night by any driver proceeding in the North-bound traffic portion of said South Oliver Street. The same situation existed as to lack of a uniformed guard, traffic signal, lighting and other means for the protection of pedestrian traffic at the Western extremity of said crosswalk, at which there was immediately to the North of same an identical sign as that on the Eastern edge of said crosswalk, immediately to the South, of the same kind, character and location. That the crosswalk at which plaintiff was injured crossed South Oliver between Boeing 'H' parking lot and the Boeing Administration Building on the West side of Oliver Street. On neither side of said South Oliver Street for the distance of approximately one mile through defendant Boeing Airplane Company's factory grounds were there at any time material hereto any street lighting.

"6. On the West side of South Oliver Street and immediately adjacent

thereto, for most of the distance through Boeing Airplane Company's factory grounds, were large factory buildings where Boeing Airplanes were manufactured and assembled, which buildings were at night well lighted. On the East side of said South Oliver Street and immediately adjacent thereto, for most of the distance through Boeing Airplane Company's factory grounds, were parking areas, principally for the use of said defendant's employees, wherein automobiles of employees were faced, for the most part, in a Westerly direction towards said South Oliver Street. Scattered throughout said parking areas, for the purpose of lighting same, were a number of light poles bearing large flood lights, some of which were faced in a direction toward said South Oliver Street. Immediately to the East of said parking areas at a distance from said South Oliver Street unknown to plaintiff, but well known to the defendant, Boeing Airplane Company, there were various and sundry factory buildings and immediately to the East of said factory buildings was the Boeing Flight Line along which there were 18 light poles arranged in a line parallel to said South Oliver Street for a distance of approximately one mile through said factory area, each of which poles bore a total of 18 flood lights, 12 of which faced towards the East and 6 towards the West directly towards South Oliver Street. All of said lights were lighted on the night on which plaintiff received her injuries and long prior to the time plaintiff received her injuries been so located and installed by the defendant, Boeing Airplane Company, as permanent fixtures, and lighted nightly; that the candle power, aim and direction of said lights was such that the field or pattern of light from same was extremely brilliant for a distance of approximately one mile North and South through the Boeing Airplane Company's factory grounds, immediately adjacent to said South Oliver Street, but which field or pattern of light provided no lighting for said South Oliver Street, but which because of the close proximity thereto was at night a constant distraction to drivers of motor vehicles traveling North and South on said Street through the defendant, Boeing Airplane Company's factory grounds, and the nature of said field or pattern of light was such as to make the headlights of a motor vehicle almost useless and to render it extremely difficult for the driver of any such motor vehicle to see any person crossing the unlighted crosswalk at which plaintiff was injured. The hazard created by reason of the location, aim, direction and pattern or field of light from said flood lights was made greater by reason of lighting from factory buildings along the west side of said South Oliver Street, immediately adjacent to but not illuminating said South Oliver Street, and said dangerous and hazardous condition was further increased at times of shift change in the nighttime by light from headlights of automobiles parked immediately adjacent to said South Oliver Street by employees of said Boeing Airplane Company in a manner directed, controlled, and supervised by the defendant Boeing Airplane Company. By reason of said illumination from said flood lights, factory buildings on the West side of South Oliver Street, southbound automobiles on South Oliver Street, and from said parked automobiles, lack of lighting, lack of traffic signal or uniformed guard to direct pedestrian traffic, an extremely dangerous and hazardous condition existed at and rendered unsafe for pedestrian traffic, the crosswalk at which plaintiff was injured. All of said factors which ren-

dered said crosswalk dangerous and hazardous were within the exclusive control of the defendants, who knew and had known for a long period of time of the dangerous and hazardous condition existing at the crosswalk at which plaintiff was injured, but who persisted in the continued existence and maintenance of said dangerous and hazardous condition throughout all times material hereto.

"7. Plaintiff further alleges that the defendant herein, The Board of County Commissioners of Sedgwick County, together with the County Engineer and Superintendent of Roads and Bridges for Sedgwick County, Kansas, did, in accordance with Section 68-301 of the 1949 General Statutes of Kansas, receive actual personal notice of said defective and nuisance condition of said highway at least five days prior to plaintiff's accident herein, but that said defendant, County Engineer and Superintendent of Roads and Bridges, failed and neglected to cause said defective and nuisance condition to be repaired despite their actual personal knowledge thereof.

"8. On September 16, 1958, at approximately the hour of 11:42 P. M., following the blowing of the whistle for the end of the second shift, Marcia Ruth Wilburn left her job on the flight line of Boeing Airplane Co. located on the east side of said South Oliver Street. She walked from her job to the crosswalk crossing said South Oliver Street between said Boeing parking lot 'H' and the Boeing Administration Building. Said Marcia Ruth Wilburn, upon arriving at the eastern edge of said crosswalk, proceeded in a careful and cautious manner to start across the street in said crosswalk. When approximately one-half way across said street, while in said crosswalk, she was struck by an automobile driven by one Lila Avis Lee, who by reason of the unlighted condition of said crosswalk, non-luminous sign warning of said crosswalk, lack of guards or signal devices at said crosswalk, and the interfering and distracting lighting condition of the area as heretofore described, was unable to see said Marcia Ruth Wilburn until immediately prior to striking her and at a time when said Lila Avis Lee was unable to avoid striking said Marcia Ruth Wilburn. As a result of being struck by said automobile driven by Lila Avis Lee, Marcia Ruth Wilburn was thrown a distance of 75 feet, and permanently and totally injured both mentally and physically, as hereinafter described.

"9. That the sole and proximate cause of the serious and permanent injuries to Marcia Ruth Wilburn was the defective, dangerous and hazardous nuisance condition of said crosswalk within which she was injured, which was created and maintained by the defendants, the factors which rendered said crosswalk defective, hazardous, dangerous and a nuisance having heretofore been alleged."

Paragraph 10 describes her injuries, and paragraph 11 refers to her life expectancy, former earning capacity, and medical bills—past, present and future. Recovery is sought in the amount of $1,250,000.

A motion by defendant Boeing to make the petition definite and certain in two particulars was overruled.

Defendants then filed a joint demurrer to the petition on the following grounds:

"1. Plaintiff's petition fails to state facts sufficient to constitute a cause of action against the defendants and in favor of the plaintiff.

"2. That this court has no jurisdiction of the person, of the defendant, or the subject of the action.

"3. That several causes of action are improperly joined.

"4. That there is another action pending between the same parties for the same cause.

"5. That the petition shows on its face that the statute of limitations is run.

"6. That the plaintiff has no legal capacity to sue.

"7. That plaintiff's cause of action, if any, is exclusively under the Kansas Workmen's Compensation Law, which law constitutes an exclusive remedy."

The demurrer was overruled, and defendants have appealed from that order.

The principal contention of Boeing is that, as to it, plaintiff's exclusive remedy is under the workmen's compensation act.

The board of county commissioners asserts the doctrine of governmental immunity in matters arising out of the regulation of traffic on county streets and highways.

The contentions and our conclusions thereon will be discussed separately.

With respect to the question whether the injuries are compensable under the act, it must be borne in mind that consistency of decisions involving interpretation of the act is not maintained by construing it liberally in favor of compensation where a workman seeks compensation, and strictly against compensation when he seeks damages. In other words, the same rule and yardstick as applied to the same facts must govern, whether invoked by the employee or employer. (*Shuck v. Hendershot,* 185 Kan. 673, 679, syl. 1, 347 P. 2d 362.)

The petition alleges that Boeing is a "factory" employing in excess of 20,000 persons. There can be no question, therefore, that it and its employees were compulsorily under the workmen's compensation act (G. S. 1959 Supp. 44-505, 44-507). In such cases, therefore, where compensation is payable, an injured employee's remedy *against his employer* is exclusively under the act. (G. S. 1949, 44-501; *Duncan v. Perry Packing Co.,* 162 Kan. 79, 174 P. 2d 78; *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 203, 231 P. 2d 239.) Boeing contends that as the petition alleges that it, Boeing, had assumed *full control* of all motor and pedestrian traffic on the street and at the crosswalk in question, the case falls within the rule of *Teague v. Boeing Airplane Co.,* 181 Kan. 434, 312 P. 2d 220. There the claimant, an employee of Boeing, had parked in

Boeing's parking lot prior to the time she was to begin work, and as she proceeded to her place of work slipped on ice in the parking lot and fell. She sought compensation under the workmen's compensation act for her injuries, and it was held that the accident was one arising out of and in the course of her employment.

Plaintiff argues the facts of that case are readily distinguishable from those here pleaded.

Finally, Boeing contends the petition charges it with negligence while plaintiff was leaving the duties of her employment, thus bringing her squarely within G. S. 1949, 44-508k, which reads:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment *or after leaving such duties,* the proximate cause of which injury is *not* the employer's negligence." (Our emphasis.)

This statute was construed in *Madison v. Key Work Clothes,* 182 Kan. 186, 318 P. 2d 991, where it was said:

"Where an employee sustains injuries occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury *is* the employer's negligence, they are injuries arising out of and in the course of employment under G. S. 1949, 44-508k. This is the only construction that gives expression to the legislative intent of the statute." (p. 192.)

Plaintiff, in seeking to avoid the application of the statute, vigorously contends her petition is founded, not on *negligence—but on nuisance.*

We pass over the many authorities cited, pro and con, dealing with "on the premises" injuries, such as the Teague case, above, and prefer to base our decision on what appears to us to be the controlling and decisive question in the case—that is—the application of G. S. 1949, 44-508k, above.

At the time and place in question, the petition alleges (paragraph 8, above) that plaintiff had left the duties of her employment and that her injuries were proximately caused (paragraph 9, above) by "the defective, dangerous and hazardous nuisance condition of said crosswalk within which she was injured, which was created and maintained by the defendants, the factors which rendered said crosswalk defective, hazardous, dangerous and a nuisance having heretofore been alleged."

The question, therefore, is whether Boeing is charged with *negligence* which proximately caused plaintiff's injuries. If so, the ap-

plication of 44-508k is inescapable, and her sole remedy against Boeing is under the compensation act.

As previously stated—plaintiff disclaims any theory of negligence and contends her petition is founded on *nuisance*—which, as contended, means the long continued maintenance of a deliberate and knowing use or condition of property in the form of a lighting arrangement, perhaps lawful in itself, but dangerous to life and unsafe by reason of its particular location on either side of a heavily traveled public road, and which such dangerous condition has resulted in damage and injury to the plaintiff. Plaintiff further argues that basic to any nuisance is the requirement that the use of property in question must be a use which endangers life or health or obstructs the reasonable use of property by others, and that that is precisely what her petition alleges.

There is no occasion here to "split hairs" in an academic discussion as to the alleged distinctions between negligence and nuisance. Briefly stated, the word "nuisance," while perhaps incapable of precise definition, generally is held to be something which interferes with the rights of citizens, whether in person, property, or enjoyment of property or comfort, and also has been held to mean an annoyance, and that which annoys or causes trouble or vexation, that which is offensive or noxious, or anything that works hurt, inconvenience or damage. (*Hofstetter v. Myers, Inc.*, 170 Kan. 564, 568, 228 P. 2d 522, 24 A. L. R. 2d 188; *Steifer v. City of Kansas City*, 175 Kan. 794, syl. 2, 267 P. 2d 474; *Lehmkuhl v. City of Junction City*, 179 Kan. 389, 295 P. 2d 621, 56 A. L. R. 2d 1409.)

Although factually not precisely in point, we believe analogies are to be drawn from the case of *Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P. 2d 78, cited above, in which it was held:

"If the injury of an employee who is under the workmen's compensation act is in other respects 'a personal injury by accident arising out of and in the course of employment,' the fact that such injury was occasioned by acts or conduct constituting *wantonness* on the part of the employer does not take such injury out from under the act, and a common-law action to recover damages for such injury will not lie." (syl. 3.) (Our emphasis.)

In the course of the opinion it was said:

"Whether the facts alleged in the petition show negligence only or whether they show wantonness on the part of the employer may be debatable. But even if the acts or conduct alleged do show wantonness, we find no authority either in the statute or in our decisions construing the statute that would justify us in saying that the injury was not compensable under the workmen's com-

pensation act. Considering the whole subject broadly, the legislature has made certain exceptions such as agricultural pursuits (G. S. 1935, 44-505), interstate commerce (G. S. 1935, 44-506) and others, but has not included 'willful misconduct' or 'wantonness' of the employer among the exceptions. Nor is there any distinction between 'gross negligence' and any other degree of negligence, as far as applicability of the act is concerned (see 71 C. J. 1485). If so compensable, an action at common law will not lie. To hold otherwise would open a by-pass around the act and permit attempted recovery in common-law actions which the act was intended to supersede. *If the plaintiff here had established the same facts in a proceeding to secure compensation under the act, can there be any doubt that he would have been entitled to an award?* If so entitled, it follows, under our decisions, that such relief is exclusive." (p. 86.) (Our emphasis.)

Plaintiff refers to 44-508k as a "strange" statute which would require her to prove common-law negligence of her employer and freedom from contributory negligence on her part—although limiting recovery to the workmen's compensation act. One answer to that, of course, is that the propriety and wisdom of the statute is entirely a matter for the legislature—and not the courts.

Notwithstanding the many arguments made in behalf of plaintiff's position, we are concerned here only with the facts pleaded and not with the conclusion placed thereon by the pleader. With respect to Boeing, our conclusion is that it is charged with *negligence* which proximately caused plaintiff's injuries while leaving the duties of her employment. Under 44-508k, and as interpreted in the Madison case, above, her injuries therefore arose out of and in the course of her employment, thus rendering them compensable under the act and barring this common-law action against her employer for damages. As previously stated, the act is not to be construed liberally in favor of compensation where a workman seeks to come within its provisions and construed strictly against compensation when he seeks damages in a common-law action. The rule is as broad as it is long—whether invoked by the employee or the employer.

As to defendant Boeing, the demurrer should have been sustained.

The remaining question concerns the liability of defendant board of county commissioners under the allegations of the petition.

What heretofore has been said concerning those allegations with respect to their charging negligence—applies equally to defendant board. Our conclusion is that it is charged with *negligence*. We believe that no one will seriously question the statement that, generally speaking, means taken by a municipality in the control and regulation of traffic upon the streets and highways constitute a

governmental function. It is an elementary rule of law in this state that municipalities are not liable for negligence in the performance of a governmental function, unless such liability is expressly imposed by law. (*Freeburne v. City of Emporia*, 176 Kan. 503, 505, 271 P. 2d 298.) An exception, however, to the general rule pertaining to immunity of a governmental instrumentality from tort liability while engaged in a governmental function, is that the doctrine of immunity does not extend to acts where the conduct of the municipality results in maintaining or creating a nuisance. (*Rose v. Board of Education*, 184 Kan. 486, 489, 337 P. 2d 652, and authorities cited therein.) We have no doubt but that traffic conditions on the street in question—and particularly during nighttime change of workshifts at the Boeing plant—are bad, but in our opinion—as to defendant board—the facts alleged do not constitute a "nuisance."

Plaintiff's other theory—as to liability of the county under the "defective highway" statute (G. S. 1949, 68-301)—is likewise without merit. Without laboring the point further, we simply hold that the facts, conditions and circumstances pleaded do not, as a matter of law, constitute a "defect" in the highway within the meaning of the mentioned statute and the many decisions construing it.

As to defendant board of county commissioners, the demurrer should have been sustained.

It follows, therefore, that the judgment is reversed with directions to sustain the demurrer as to each defendant.

ROBB, J., dissents.

SCHROEDER, J., dissenting: The rule is established in this jurisdiction that a general demurrer challenging the sufficiency of an entire petition to state a cause of action must be overruled if the pleading states a cause of action on any theory. (*Voss v. Bridwell*, 188 Kan. 643, 364 P. 2d 955.)

Liberally construed the petition in this case definitely alleges a cause of action on the theory of nuisance against each of the defendants. In paragraph six the floodlights are described in great detail as they affect the use of the highway described in the petition. The court is here confronted with the allegations of a petition on demurrer and not evidence produced at the trial. It is conceivable the plaintiff may not be able to prove a cause of action on the theory of nuisance at the trial, but in this connection see *Voss v. Bridwell*, supra. Certainly, a nuisance has been alleged

by the factual allegations of the petition in this case. (*Neiman v. Common School District*, 171 Kan. 237, 232 P. 2d 422; *Buckmaster v. Bourbon County Fair Ass'n*, 174 Kan. 515, 256 P. 2d 878; *Eble v. State*, 77 Kan. 179, 93 Pac. 803; see, also, *Robinson v. Westman*, 224 Minn. 105, 29 N. W. 2d 1; *Gleason v. Hillcrest Golf Course*, 265 N. Y. S. 886, 148 Misc. 246; *Robb v. Milwaukee*, 241 Wis. 432, 6 N. W. 2d 222; and *Nat. Refining Co. v. Batte*, 135 Miss. 819, 100 So. 388.) Floodlights can be so intense as to permeate an area and blind persons driving vehicles on a highway within such area, and constitute a nuisance just as effectively as permeating an area with noxious odors from a sewage disposal plant. (See *Adams v. City of Arkansas City*, 188 Kan. 391, 362 P. 2d 829.)

It is immaterial to a cause of action in nuisance that negligence may also be incidentally alleged or involved. In *Adams v. City of Arkansas City*, supra, this court said:

"The gravamen of the offense in actions of this nature is not necessarily negligence but nuisance, and is dealt with by the law of nuisance, whether the nuisance is negligently caused or otherwise. . . ." (p. 400.)

On this point see *Lehmkuhl v. City of Junction City*, 179 Kan. 389, 394, 295 P. 2d 621; *Bailey v. Kelly*, 93 Kan. 723, 727, 145 Pac. 556; 39 Am. Jur., Nuisances, § 4, p. 282; 66 C. J. S., Nuisances, § 11a, p. 751; *Warren v. Bridgeport*, 129 Conn. 355, 28 A. 2d 1; and *Robinson v. Westman*, supra.

Under the workmen's compensation act a workman is entitled to compensation for injury occasioned by accident arising out of and in the course of his employment. Whether the accident is unavoidable or arises from negligence or a greater culpable act is immaterial, and contributory negligence on the part of the injured employee is of no consequence. It was on this theory of the workmen's compensation act that *Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P. 2d 78, was decided, but this law is applicable *only where the workman is injured on the premises or in the course of his employment.* It has no application to a workman going to or from his place of employment. In this situation G. S. 1949, 44-508(*k*) has application. Clearly, this section of the act *specifies only negligence.* Furthermore, liability is imposed on the employer only if the injury occasioned is the *proximate cause* of the employer's negligence, thus injecting the issue of the injured workman's contributory negligence. An accidental injury, absent such negligence on the part of the employer, would not entitle the workman to compen-

sation under the act while enroute to his employment. (*Madison v. Key Work Clothes,* 182 Kan. 186, 318 P. 2d 991.)

For the same reason an act of the employer, other than negligence, such as a nuisance created and maintained by the employer, or a culpable act of greater magnitude than ordinary negligence, would not be within the compass of 44-508(*k*), *supra.* Therefore, a workman who has a cause of action for an injury occasioned to him enroute to his place of work by a nuisance created and maintained by his employer should be free to assert his claim in a common law action against his employer.

Here the admitted facts on demurrer are that the defendant Boeing *failed* to assert any precautionary control or regulation over the crosswalk where the plaintiff was struck down, and thus *by the absence* of control had permitted the dangerous lighting condition to exist as a nuisance at the very spot where the plaintiff was injured.

It is true that if negligence on the part of the employer were also present and proximately caused the workman's injury, the workman could assert his right under the workmen's compensation act, but the workman is not required to invoke the provisions of the workmen's compensation act.

Under these circumstances the workman should have an election whether to proceed under the act on the ground of negligence or in a common law action against his employer on the ground of nuisance.

An analogous situation was presented in *Davis v. Reed,* 188 Kan. 159, 360 P. 2d 847, where an employee was injured in an automobile accident caused by a third person while in the course of his employment. The court held that when the injury to a workman for which compensation is payable under the workmen's compensation act is caused under circumstances creating a liability against some person other than the employer to pay damages, and the injured workman fails to assert the right to take compensation under the act by filing the claim or accepting compensation, the provisions of G. S. 1959 Supp., 44-504 are not invoked, and the injured workman may assert his common law action against the third party wrongdoer in tort at any time within two years from the date the cause of action accrued under G. S. 1949, 60-306. In other words, the workman had an election of remedies.

Here the same principle should apply because the provisions of

the workmen's compensation act have not been invoked, and under the facts and circumstances of this case it should make no difference that the wrongdoer was the employer.

It is respectfully submitted the lower court should be affirmed.

WERTZ, J., concurs in the foregoing dissenting opinion.