(130 So. 186)

### CITY OF TUSCALOOSA et al. v. STANDARD OIL CO. OF KENTUCKY.

### 6 Div. 628.

Supreme Court of Alabama.

May 29, 1930.

Rehearing Denied Oct. 23, 1930.

Livingston & Livingston, of Tuscaloosa, for appellee.

Harwood & McQueen, of Tuscaloosa, for appellants.

**THOMAS, J.**

The question for decision is: Under the circumstances, conditions, and surroundings, will the proposed filling station constitute a nuisance per accidens?

The action of the building inspector in refusing the permit of petitioner was sustained by the Board of Appeals. And petition for mandamus was filed in the circuit court to compel said inspector to issue the building permit in question.

The trial thereof was upon oral evidence before the court rendering judgment overruling denial of the desired permit.

■ The decisions as to filling stations in residential sections are to the effect that they are not nuisances per se. Laughlin, Wood & Co. v. Cooney (Ala. Sup.) 126 So. 864;[1] Nevins v. McGavock, 214 Ala. 93, 106 So. 597; Bloch v. McCown et al., 219 Ala. 656, 123 So. 213; Gillette v. Tyson, 219 Ala. 511, 122 So. 830; Higgins v. Bloch, 213 Ala. 209, 104 So. 429; Id., 216 Ala. 153, 112 So. 739; First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L. R. A. (N. S.) 522. That the finding on the facts from the oral testimony has the same effect as a verdict of a jury, and will not be disturbed unless clearly wrong, after allowing the usual and reasonable presumptions to support the same, unless the preponderance of the evidence is against such finding and judgment and the same is clearly wrong and unjust, is the holding in Benton Mercantile Co. v. Owensboro Wagon Co., 207 Ala. 49, 91 So. 784; Curb v. Stewart, Adams & Co., 215 Ala. 511, 110 So. 804; Pizitz Dry Goods Co. v. House of Ban Praag, 219 Ala. 183, 186, 121 So. 701.

■ It is further declared by this court in such a case that a bare possibility of injury will not warrant interference against an alleged threatened nuisance. Nevins v. McGavock; Higgins v. Bloch, supra; Rouse & Smith v. Martin & Flowers, 75 Ala. 510, 51 Am. Rep. 463; section 9271, Code, and authorities cited.

The agreed statement of facts contains, among other things, the following:

"That the pleadings in said cause shall be in short by consent, but that the answer filed by the respondents shall be used and looked to, as to the facts which are admitted by the respondents; that the only question for the determination of the court, in addition to the facts admitted in the answer of the Respondents, is, will the proposed filling station constitute a nuisance per accidens, in the locality in which the petition seeks to locate the same, under all the circumstances, conditions, and surroundings, and that this fact shall be determined by the court from the testimony ·of witnesses examined orally before the court."

The difficulty of formulation of rules accurately defining acts or "facts which would constitute a nuisance under any and all circumstances" was declared in English v. Progress Electric Light & Motor Co., 95 Ala. 259, 10 So. 134; Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A. L. R. 1223; Rouse & Smith v. Martin & Flowers, supra.

■■ The burden of proof is upon the respondents; it is agreed that the proposed filling station is not a nuisance per se. Higgins v. Bloch, 216 Ala. 153, 112 So. 739. And if there is reasonable doubt as to the probable effect of an alleged nuisance, either on the proof or the construction of the facts averred, there will be no interference until the matter is tested by the actual use and resultant facts. Rouse & Smith v. Martin & Flowers, 75 Ala. 511, 51 Am. Rep. 463.

The rules as to permitting evidence in such a case were recently well stated in Gillette v. Tyson, 219 Ala. 511, 122 So. 830.

When the evidence is carefully considered, it is shown that the proposed filling station is not located in a strictly residential section. That the location is, and so found by the trial court, diagonally across the street from a grocery store and filling station consisting of one gasoline pump; that gasoline and motor oils are sold at this filling station, and have been sold for some time past; that for this business the respondents did duly issue a permit for its operation, and have in the past sanctioned its operation; that there is now located within (or about) three blocks of the proposed filling station an ice factory in full operation; that the site on which the said ice factory is located was sold to the ice company through the Harrison Realty Company, of which said firm J. I. Harrison is a member; that Mr. Harrison is a vigorous objector to the building of the proposed filling station; that there is located within three and one-half blocks of said proposed filling station site, a machine shop, and it is in full operation and has been for a long period of time; that the Warrior Southern Railroad has and maintains a railroad track, over which trains are run, within or about three blocks of the proposed filling station site; that there is a large tract of vacant and unimproved property lying along and adjacent to said railroad company's track, and along and adjacent to Queen City avenue; that this unimproved property extends up to within about a block' and a half of the proposed filling station site; and that this property is desirable for industrial purposes.

---

[1] 220 Ala. 556.

■ The court was justified in holding that the construction and operation of the proposed filling station on this proposed site was in a semiresidential section, and that the judgment of the court in this respect is supported by the evidence. The respondents in this cause rely very largely on two cases, Bloch v. McCown, 219 Ala. 656, 123 So. 213, and National Refining Co. v. Batte, 100 So. 388, 35 A. L. R. 91, the latter being a Mississippi case (135 Miss. 819). It may be insisted that these cases do not support appellants' insistence for reversal of this cause. The case of National Refining Co. v. Batte, as well as Bloch v. McCown, turns upon a question of pleading. The appellee observes of these cases that complainant cannot be prevented from alleging facts in his complaint, but many times circumstances and the lack of evidence prevent proof of the matters alleged therein; and so as to Gillette y. Tyson, 219 Ala. 511, 122 So. 830. Such, of course, is the fact as to pleading. The locus in quo of the Bloch Case (in this jurisdiction) was at or about the same place where injunction was granted in Higgins v. Bloch, 216 Ala. 153, 112 So. 739. The case of Gillette v. Tyson, supra, no doubt, was agreed upon at the trial, since the improvements had been completed upon the lot. And so of the case of Gillette Bldg. Inspector, etc., v. Firestone Tire & Rubber Co., 219 Ala. 513, 122 So. 831. However, we are not informed by this record as to how some of the above cases terminated on the facts agreed upon or shown at the trial. .

The immediate questions, as to the evidence before the court, and the results that will be attendant upon the operation of the proposed filling station, are: Will there be an emission of odors, vapor, dust, smoke, gas, and noise, and whether or not there will be thrown from the station or from the headlights of automobiles entering or leaving that station, glaring lights, at unreasonable hours of the night, reflecting into the premises of complainants; or will any or all of said incidents and happenings inevitably disturb the peace and comfort of adjacent property owners; will the operation of a tire service station on said lot inevitably be attended by loud and disagreeable noises, due to the manipulation of steel or other metal parts of automobile wheels with hammers or other instruments, and other noises incident to the operation of a tire shop? Is there evidence that cars entering a proposed filling station will throw their lights directly upon or into private residences in the neighborhood, or at all or unreasonable hours of the night? The foregoing were pertinent inquiries on the hearing upon the facts.

It is admitted by appellee that the cars turning into the proposed filling station from Queen City avenue may, as they make the turn, throw lights on portions of two residences which are 135 feet and 165 feet, respectively, from said station; but the evidence conclusively shows that this will not happen after the station closes at night, and that this is no more than happens every time an automobile turns a corner.

The proposed filling station in this case will be placed "cater-cornered on the lot at the intersection of Thirteenth Street and Queen City Avenue." And there is a tendency of evidence that such a location will minimize this result or prevent the lights from automobiles shining directly on any residence.

When the whole evidence is carefully examined, several important facts are established: (1) That the location and operation of such filling station at the place in question is not necessary for the convenience of citizens living thereabout, and there are ample or sufficient stations to meet the demands in that neighborhood; (2) that, as proposed, there would be two driveways extending diagonally across from Queen City avenue to Thirteenth street, and in passage thereon the automobile lights would shine into the Harrison residence; (3) that cars on the greasing part of the station would reflect into or upon the Cochrane residence; (4) that the property in the immediate neighborhood would be depreciated in market value by reason of such "improvement"; (5) that there was protest to the proposed location of the station, and the same was duly brought to the attention of the petitioners' agent, who thereafter purchased said property against the objection of adjacent or contiguous resident and householders; (6) that the location is at a frequented corner, where collisions have occurred, and that the station would have a tendency to increase that traffic and danger; (7) that there will be no repair department operated, and tires will be changed only in emergency; (8) that at night the station will be brilliantly lighted with shaded lights, yet the lighting will be such as that it will be visible some blocks away; (9) that, as stated otherwise above, for years this has been a neighborhood used for residential purposes; (10) and that the sidewalk of Thirteenth street at said point is in constant use by school children of the city, on an average of about 500 passing twice daily, and that the erection of the proposed station will endanger the children so passing.

■■ We are of opinion that the business indicated should not, over the objections of adjacent and neighboring property owners, be intruded upon that section of the city previously and largely devoted to residential purposes. Bloch v. McCown, 219 Ala. 656, 123 So. 213. And there is no public necessity shown for its location.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.