106 N.J. Super. 346 (1969)
255 A.2d 804
FRANK FORTE AND LOUISE B. FORTE, HIS WIFE, NICHOLAS D'IPPOLITO AND KATHERINE D'IPPOLITO, HIS WIFE, LEWIS D'IPPOLITO AND MADELINE D'IPPOLITO, HIS WIFE, JOSEPH LORENZO AND KATHERINE LORENZO, HIS WIFE, EDO BARZELATTO AND MARY-ANN BARZELATTO, HIS WIFE, AND HERWIN CENTERS, INC., PLAINTIFFS-RESPONDENTS,
v.
THE BOROUGH OF TENAFLY AND THE PLANNING BOARD OF TENAFLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1969.
Decided July 8, 1969.
*347 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Donald W. DeCordova argued the cause for appellants (Messrs. Morrison, Lloyd and Griggs, attorneys).
Mr. C. Conrad Schneider argued the cause for respondents (Messrs. Schneider, Schneider, Behr & Carlton, attorneys).
*348 The opinion of the court was delivered by GAULKIN, S.J.A.D.
Defendants (hereinafter Tenafly) appeal from a judgment declaring Tenafly's amended zoning ordinance unconstitutional insofar as it forbade the construction of a supermarket upon plaintiffs' lands.
Prior to August 1967, the zoning ordinance permitted such a use in the zone in which plaintiffs' lands were situated. arly in 1967 plaintiffs applied to the building inspector for a permit to build the building, and to the planning board (board) for approval of its site plan and parking area. The board, aided by Kendree and Shepherd, planning consultants, was then engaged in a planning study of the borough with a view toward a comprehensive master plan. The consultants had recommended and the board agreed that the "central business core" of the borough should not only be preserved as the borough's retail shopping area, but strengthened and improved. This was to be done principally by improving the roads and the traffic pattern in said core to eliminate through-traffic and traffic congestion, and by forbidding retail businesses in the rest of the borough. This the board and its advisers felt would encourage retail businesses in the area to remain and improve and expand their properties, thus improving the appearance and enhancing the value of all properties in the business area, and providing the borough with an inviting "downtown" center. If retail businesses were allowed to spread along the roads throughout the borough, it was believed the central business area would deteriorate and decay. Therefore, instead of approving plaintiffs' application, the board adopted a resolution asking "that an interim zoning ordinance amendment be adopted in order to create a new district known as the C-2 District in order to discourage and restrict the spread of retail business beyond the downtown business core * * *." Shepherd, the borough's planning consultant, testified that 93% of all of the borough's retail business establishments were in the central business core.
*349 The governing body agreed and, on November 28, 1967, passed ordinance No. 939. The ordinance recited the resolution of the planning board and created the C-2 District, stating
"A. Intent  This district is intended for commercial and wholesale services and small local convenience neighborhood service establishments and other businesses not suited to the general retail business zone, and to provide uses which will not have an adverse effect upon the downtown business core."
The C-2 District included plaintiffs' property.
That portion of the C-2 zone here involved included all the lands previously contained in the business zone on the west side of County Road north of Mahan Street to the Cresskill border. Plaintiffs' lands were on said side of County Road, beginning at Prospect Terrace, the street north of and parallel to Mahan Street. At the time of the passage of the amendment there were a number of businesses in the new C-2 zone. Coming south from the Cresskill border on said side of County Road there was a Robert Hall clothing store. In the next block, between Summit Street and Hudson Avenue there was an Esso Service Station, Midtown County Rambler (selling new and used cars), County Auto Parts, an unoccupied but recently renovated business building and a funeral home. Continuing south, in the next block there was Lamb Studios (manufacturers of ceramics) and property occupied jointly by Stryker Drafting and Manufacturing Company and Poretta Plumbing and Heating Company. Then came plaintiffs' lots. Below Prospect Terrace there was a barber and beauty shop, a tavern with a catering service, a TV repair shop and a small grocery store with living quarters on the second floor. On the easterly side of County Road, opposite the premises in question, (zoned residential), there is a Ford automobile agency at the corner of Summit Street, a gasoline station at the corner of Hudson Avenue, between Hudson and Prospect a dance school and studio, and on the corner of Prospect *350 and County Road a cocktail lounge. The land abutting plaintiffs' property to the rear is in the M-1 industrial zone.
Plaintiffs immediately instituted this action to have the ordinance declared invalid. Defendants contend that the action should have been dismissed because plaintiffs failed to first apply for a variance. Under the circumstances here presented, it would have been futile to apply for a variance and therefore it was proper for plaintiffs to proceed as they did.
After a full trial, the trial court entered the judgment appealed from.
Defendants made some effort before the trial court to justify the elimination of retail stores in the C-2 zone on the ground that such uses would increase traffic on County Road, and so forth. The trial judge ruled, in effect, that since the true reasons were those expressed in the ordinance itself, it was not necessary to pass on the other alleged justifications. We agree, but add that the evidence does not establish any other justification. In other words, if the intention to preserve, rehabilitate and improve the central business area does not sustain the ordinance, it must fall.
The first question, then, is this: May a municipality which wishes to preserve, rehabilitate and improve an established business area devoted chiefly to retail stores, zone the rest of the municipality against retail sales? We hold that it may.
Plaintiffs admit that if Tenafly were writing on a clean slate it could zone one part of the borough for retail stores and forbid all but residential use in the remainder of the borough. However, they argue that here Tenafly did not write on a clean slate; before the amendment of the ordinance they were in the same zone and had the same rights as those in the so-called central business core; much of the land in the C-2 District was already devoted to commercial uses, including retail, and since the ordinance was tailored to permit nearly all of them to continue as nonconforming *351 uses, the amendment was a sham directed against them alone, solely because they wanted to build a supermarket. Plaintiffs insist it was passed for the sole benefit of the merchants in the central business core; therefore it was unlawfully oppressive, discriminatory and unconstitutional. Futhermore, even assuming that Tenafly would have had the right to forbid retail stores in an area not already commercial, it was arbitrary and unreasonable to do so in this area, already largely commercial (including retail) and abutting commercial and industrial zones. They point out that the Robert Hall store sells only at retail, the gas station and the auto parts store are of course retail, and the manufacturers of ceramics may be selling at retail, as may the plumbing and heating and the barber and beauty shops, the tavern and the TV repair store. The small grocery store admittedly sells only at retail.
The trial judge ruled, in effect, that since the avowed purpose of the ordinance was "to protect the business district" it was invalid. We think that was too narrow a view. Zones are often created or uses therein curtailed in a manner which benefits other zones. The mere fact that this is one of the purposes of the ordinance does not make it invalid. An area desirable for industry may be zoned otherwise because industry would damage a nearby residential or business zone. Conversely, residential uses may be forbidden in or near industrial areas to encourage the full expansion of industrial plants therein without fear of complaint of nuisance. It is true that a municipality may not, by zoning or otherwise, exclude a particular use only because it will compete with an existing business or businesses (179 Duncan Ave. Corp. v. Jersey City, 122 N.J.L. 292 (Sup. Ct. 1939)), but if the exclusion of competition happens to be an incident or effect of otherwise valid zoning, it does not invalidate it.
Tenafly has what it considers to be a decaying central business core, choked by poor parking and traffic facilities. We take judicial notice that this is a problem which *352 today faces many municipalities. Tenafly could have permitted the deterioration to continue into blight, hoping that new and desirable retail business areas would develop elsewhere. Instead, it appears that it wishes to make a strong effort to revitalize the present area. It elected to do so upon the recommendation of the planning consultants and the planning board. We hold that it has the right to do so, and the fact that the ordinance may give the central area a virtual monopoly over retail business does not invalidate it.
There is no evidence that Tenafly is trying to keep out supermarkets, or to benefit any particular business or businesses in the central business core. Tenafly is perfectly willing for supermarkets to open in C-1 zones, where such uses are permitted, although it concedes that there may be difficulty in finding or assembling therein the necessary land.
Assuming that the ordinance is generally valid, it leaves the question whether it is unreasonable and therefore invalid insofar as it applies to plaintiffs' property. Plaintiffs contend that it is unreasonable for the ordinance to take away from them the right to sell at retail because nearly every one of their neighbors in the C-2 zone sells at retail  some, like Robert Hall and the grocery, only at retail. They argue that the neighbors will continue to sell at retail either as permitted, accessory or nonconforming uses; hence it is discriminatory, arbitrary and unreasonable not to let them do likewise. But plaintiffs may use their property for the many purposes allowed by the ordinance. If they do, they will have the same rights to make incidental or accessory retail sales as those already carrying on similar businesses in the C-2 zone. The nonconforming retail stores are not so numerous as to make the ordinance unreasonable.
The judgment is reversed.