468 P.2d 290

**COLE–COLLISTER FIRE PROTECTION DISTRICT, a Corporation, Plaintiff-Respondent,**

v.

**CITY OF BOISE, a Municipal Corporation, Defendant-Appellant.**

No. 10320.

Supreme Court of Idaho.

March 10, 1970.

Rehearing Denied May 1, 1970.

Clemons, Skiles & Green, Boise, for defendant-appellant.

Millar, Callister & Carter, Boise, for plaintiff-respondent.

DONALDSON, Justice.

The plaintiff-respondent, Cole-Collister Fire Protection District, owns a vacant parcel of real property located on the Northwest corner of the intersection of Cole and Ustick Roads in the City of Boise. Pursuant to I.C. § 50–1201 et seq., Boise City zoned the property in question "L-O" or "Limited Office District."[1] This designation precludes the erection of a gasoline station on property situated within the "L-O" zone.[2] The respondent orig-

1. Boise City Code.
"SECTION 11–2–7: REGULATIONS FOR LIMITED OFFICE—L-O DISTRICT
11–2–7.1: Purpose—A Limited Office District is created to accommodate a demonstrated need for the development of office space together with necessary off-street parking facilities in locations served by primary access, yet inappropriate for commercial development because of close proximity to residential uses. It is intended that administrative, professional and limited business office uses permitted in this district shall be located and designed so as to be in harmony with adjacent residential uses. The following regulations shall apply, in addition to the general regulations of this ordinance, to property in any L-O District.
11–2–7.2: Uses Allowed
(a) Professional and administrative office;
(b) Accessory uses relating to professional and administrative office;
(c) Mortuary."

2. Pursuant to Boise City Code, § 11–2–7.3 certain enumerated uses other than those designated by § 11–2–7.2 are permitted.
"11–2–7.3: Conditional Uses Permitted —The following uses shall be permitted only when authorized by a Conditional Use Permit obtained as provided in Section 11–1–9:
(a) Single-family, two-family, multiple-family and multiple-family high rise dwelling; (b) Bank; (c) Boarding and rooming house; (d) Convalescent home, nursing home; (e) Home for ambulatory aged, rest home, elderly housing; (f) Hospital; (g) Laboratory, research, dental and medical (nonindustrial); (h) Motel; (i) Nursery school; (j) Parking lot; (k) Prescription optician shop; (l) Prescription pharmacy; (m) Public building; (n) Public utility facility (non-

inally purchased the property in question for use as a fire station. However the need for a fire station in this area became obviated and at present respondent wishes to dispose of the property. Respondent received an offer from Standard Oil of California to purchase the parcel for $27,-000.00 conditioned on the right of Standard Oil to construct a gasoline filling station thereon. As heretofore stated, a gas station is not a "permissible use" in a zone designated "L-O." At the trial testimony was presented which indicated that respondent advertised the property for sale, but received no offers to purchase except the one from Standard Oil. There is no testimony of record that indicates respondent's property is useless or of no economic value if it is not used as a gasoline station; however there is testimony that respondent's land is worth only $12,000.00 to $15,000.00 so long as the restrictions of a "L-O" zone apply while it is worth $27,000.00 to $30,000.00 if a gasoline station could be erected upon it. The record reveals that although Boise City has zoned the respondent's land in question and adjoining parcels "L-O," thus prohibiting the use of land so zoned for commercial purposes, it has in fact permitted commercial establishments (gas station, drive-in restaurant, health and beauty salon, animal hospital) to exist in proximity to the property in question under the doctrine of non-conforming use.[3] In fact all of the "L-O" district except for the lot in question is made up of non-conforming establishments having life expectancies in excess of fifteen to twenty years. The record further reveals that both streets bordering the corner parcel in question are major traffic arterials and furthermore that the parcel would be unsuited and undesirable as residential property or as an office location.

The gravamen of the complaint was that because of the location of the property in question which is surrounded by commercial establishments (permitted to exist under the doctrine of non-conforming use) and roadways carrying heavy traffic, such property is not desirable as "L-O" zone property, i. e., offices, accessory uses related to offices, mortuary, nor for any of the authorized conditional uses, assuming that a conditional use permit was applied for and approved. Thus the property has a limited value as long as it is classified "L-O." However the property does have considerably greater value as the location for a gasoline filling station. For this reason the "L-O" zoning classification imposed on respondent's property was alleged to be unreasonable, arbitrary, and capricious, depriving him of his property without due process of law in violation of rights afforded under both the United States and Idaho Constitutions.

The trial court sitting without a jury found merit in respondent's claim and made conclusions of law which stated that the zoning ordinance in question was confiscatory, arbitrary and unreasonable and void as to the property of the respondent and that the respondent or any subsequent owner of the property is entitled to erect and maintain on said property a service

industrial) ; (o) School, public, private or parochial;"
Those uses not enumerated under § 11-2-7.1 or § 11-2-7.3 are prohibited.
"11-2-7.4: Prohibited Uses—Uses not specified above are prohibited unless determined by the Planning Director, in accordance with Section 11-1-5.1(g), to be similar in nature to those specified."

3. Non-conforming uses—Uses permitted by zoning statute or ordinances to continue notwithstanding the fact that similar uses are not permitted in the area in which they are located. Black's Law Dictionary, Revised 4 ed. (1968) ; Beyer v. Mayor and City Council of Baltimore, 182 Md. 444, 34 A.2d 765 (1943). The continuation of non-conforming uses is permitted because not to allow them to continue would be a violation of the due process clauses, cf., O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031 (1949). However the continuation of non-conforming uses is designed to avoid the imposition of hardship on the owner of property *but eventually the non-conforming use is to be eliminated.* See 8A McQuillin, Municipal Corporations, § 25.183, pp. 16–18.

station selling petroleum products. Furthermore the trial court enjoined the appellant from bringing any civil or criminal action against the respondent or its successors arising out of the use of the subject property.

 It is beyond dispute that a local legislative body has the right to enact zoning ordinances. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). However such an ordinance must bear a reasonable relationship to the goal or ends sought to be attained. The Court of Appeals of New York clearly stated the principle in holding invalid a zoning ordinance when it stated:

" 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.' (Nectow v. City of Cambridge, 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842.)" Matter of Concordia Collegiate Institute v. Miller, 301 N.Y. 189 at 196, 93 N.E.2d 632 at 636, 21 A.L.R.2d 544 (1950).

Furthermore, zoning ordinances cannot be arbitrary since they interfere with the free use of property and thus the validity of a zoning ordinance depends on a reasonable relation to the police power. Continental Oil Co. v. City of Twin Falls, 49 Idaho 89 at 106, 286 P. 353 at 358 (1930); Appeal of Sawdey, 369 Pa. 19, 85 A.2d 28 (1951). In determining the question of reasonableness or unreasonableness of an ordinance, all the existing circumstances or contemporaneous conditions, the objects sought to be obtained, and the necessity or lack thereof for its adoption, will be considered by the court. White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778 (1959); Continental Oil Co. v. City of Twin Falls, *supra*.

The New York Court of Appeals in *Vernon Park Realty v. City of Mount* Vernon, 307 N.Y. 493, 121 N.E.2d 517 (1954) considered a problem almost identical to the one presented by the case at bar where a parcel of land was placed in a zoning classification which precluded its use for purposes to which it was most readily adopted.

"On this record, the plaintiff, having asserted an invasion of his property rights, cf. Rodgers v. Village of Tarrytown, 302 N.Y. 115, 96 N.E.2d 731, has met the burden of proof by establishing that the property is so situated that it has no possibilities for residential use and that the use added by the 1952 amendment does not improve the situation but, in fact, will operate to destroy the greater part of the value of the property since, in authorizing its use for parking and incidental services, it necessarily permanently precludes the use for which is most readily adapted, i. e., a business use such as permitted and actually carried on by the owners of all the surrounding property. Under such circumstances, the 1927 zoning ordinance and zoning map and the 1952 amendment, as they pertain to the plaintiff's property, are so unreasonable and arbitrary as to constitute an invasion of property rights, contrary to constitutional due process and, as such, are invalid, illegal and void enactments. U.S.Const. 5th and 14th Amends.; N.Y.Const. art. I, §§ 6, 7; Rockdale Construction Corporation v. Incorporated Village of Cedarhurst, Nassau County, 301 N.Y. 519, 93 N.E.2d 76; Arverne Bay Construction Co. v. Thatcher, supra [278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1110]; Dowsey v. Village of Kensington, supra [257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642]; Eaton v. Sweeny, supra [257 N.Y. 176, 177 N.E. 412]; Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322; Town of Islip v. F. E. Summers Coal & Lumber Co., 257 N.Y. 167, 177 N.E. 409." Vernon Park Realty v.

City of Mount Vernon, 307 N.Y. 493 at 499, 121 N.E.2d 517 at 519, 520 (1954).

 It is a firmly established principle of law that a presumption of validity must be accorded to the decisions of the municipal zoning board.

"Ordinances and resolutions of a municipal corporation are presumed valid until the contrary is shown. The burden is on the party who attacks such an act to show the illegality thereof. City of Idaho Falls v. Grimmett, supra [63 Idaho 90, 117 P.2d 461]; Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027; Baxley v. City of Frederick, 133 Okl. 84, 271 P. 257; City of Spokane v. Coon, 3 Wash.2d 243, 100 P.2d 36; Hughes v. City of Carlsbad, 53 N.M. 150, 203 P.2d 995; Seifert v. City of Poplar Bluff, Mo.App., 112 S.W.2d 93; McQuillin, 3rd Ed., §§ 22.34, 24.31." Boise City v. Better Homes, Inc., 72 Idaho 441 at 447, 243 P.2d 303 at 306 (1952).

See also, City of Idaho Falls v. Grimmett, 63 Idaho 90, 91, 117 P.2d 461 (1941); 3 Anderson, American Law of Zoning, p. 584, § 21.16 (1968). However a presumption of law is merely a rule which requires that the court draw a particular inference from a fact *unless and until the truth of such inference is disproved.* Black's Law Dictionary, Rev. 4 ed. (1968); Lane v. Missouri Pac. Ry. Co., 132 Mo. 4, 33 S.W. 645 (1895); 1 Greenleaf on Evidence, §§ 14, 33.

This court carefully considered the concept of "presumption" in the case of Haman v. Prudential Insurance Co. of America, 91 Idaho 19, 415 P.2d 305 (1966) and stated:

"In Madron v. McCoy, 63 Idaho 703, 126 P.2d 566 (1942), it was held that if insufficient evidence is presented by the party against whom the presumption operates, the presumption will entitle the party relying on it to judgment. In Brown v. Graham, 62 Idaho 388, 112 P.2d 485 (1941), this court considered the other side of the evidentiary value

to be attributed to such presumption and by a divided opinion held that clear, convincing and uncontradicted evidence in opposition to the presumption will prevail as a matter of law over the presumption, and that it was incorrect to instruct the jury, that in order to overcome the presumption the evidence must be clear, convincing and uncontradicted. In Department of Finance v. Union Pacific R. R. Co., 61 Idaho 484, 104 P.2d 1110 (1940), it was held that if reasonable minds might differ as to the conclusions to be drawn from the evidence opposing the presumption, the matter should be submitted to the jury, and the jury informed as to the presumption, quoting from Geist v. Moore, supra [58 Idaho 149, 70 P.2d 403], as follows:

'* * * and in the following cases this court had definitely committed itself to the doctrine that where there is a conflict between the presumption and contrary evidence, from which reasonable minds might draw different conclusions, it is proper to instruct the jury as to the presumptions. (citing cases.)' "

91 Idaho 19 at 25, 415 P.2d 305 at 311 (1966).

 We emphasize that the burden of proof devolved upon the plaintiff-respondent, at the district court level, to show that the zoning ordinance as applied to the property in question was confiscatory, arbitrary, unreasonable and void. Boise City v. Better Homes, Inc., *supra.* This burden respondent has sustained as demonstrated by the ample evidence contained in the record to support the legal conclusion that the zoning ordinance was unlawful as applied to the respondent's property.

 Once the respondent overcame the presumption of validity by introducing evidence tending to show that the ordinance in question had been unreasonably applied to his property, the burden was then shifted to Boise City to come forward with evidence to rebut the respondent's evidence and to show that the ordinance was valid. Hendricks v. City of Nampa,

93 Idaho 95, 456 P.2d 262 (1969). In order to sustain the validity of its ordinance, Boise City then bore the burden of introducing evidence which would tend to show that the erection of a gasoline filling station on the property in question would be disruptive of the neighborhood, produce noise, or in some way be injurious to public health, safety or morals. However Boise City produced not one iota of evidence probative of the legal conclusion that the erection of the filling station would interfere with the goals articulated by the statute which prescribes the ends sought to be attained via the aid of zoning regulations.[4] The presumption of validity originally attached to the Boise City ordinance disappeared from the case and it behooved Boise City to produce legally competent evidence which tended to prove that the ordinance restricting the use of respondent's property was at least reasonably related to the intended purposes of I.C. § 50–1201 et seq. By our holding today we have not thwarted Boise City's plan to control its future. Planning is indeed an admirable and necessary element for the proper growth of cities. However a municipal body cannot disrupt individual freedoms which are guaranteed by both the Idaho and United States Constitutions under the guise of planning. Since Boise City produced no evidence to support the legal conclusion that the erection of a gasoline filling station on the property in question would be injurious to the public health, safety, and morals of the community, it is clear from the record that the evidence preponderated in favor of the respondent.

If the evidence were in a state of equilibrium, then under the presumption of validity attached to the ordinance, the party attacking its validity would lose. Graves et al. v. Colwell, 90 Ill. 612 (1878). This result is correct since the party attacking the validity of the ordinance bears the risk of the non-persuasion of the trier of the fact; he will lose if he fails to convince the jury or court of the justice of his position.

"Where the parties to a civil action are in dispute over a material issue of fact, then that party who will lose if the trier's mind is in equipoise may be said to bear the risk that the trier will not be affirmatively persuaded or the risk of non persuasion upon that issue."[5]

The ultimate burden of persuasion is on the party attacking the validity of an ordinance. Hendricks v. City of Nampa, *supra.*

In accord with the aforementioned principles, if the validity of the ordinance as applied to the property in question can be said to be fairly debatable (evidence in equipoise) its validity must be upheld. Huneke v. Glaspy, 155 Colo. 593, 396 P.2d 453 (1964); Metropolitan Dade County v. Greenlee, Fla.App., 224 So.2d 781 (1969).

However in the instant case, the record discloses that there was substantial and competent evidence to support the trial court's finding and such finding will not be disturbed by the Supreme Court on appeal. Thompson v. Wise Boy Min. & Mill. Co., 9 Idaho 363, 74 P. 958 (1903); Boise Payette Lumber Co. v. Bales, 52 Idaho 762, 20 P.2d 214 (1933). Furthermore where plaintiff has made out a prima facie case and the defendant introduces no evidence, the judgment will not be

---

4. "50–1203. Regulations—Purposes in view.—Such regulations shall be made in accordance with a comprehensive plan, and shall be designed to lessen congestion in the streets, to safeguard from fire, panic and other damages, to promote public health, safety, morals and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city."

5. James, Civil Procedure, § 7.6 (1965).

disturbed. Foster v. Anschustigui, 37 Idaho 136, 215 P. 463 (1923). There is ample evidence probative of the conclusion that the ordinance was unreasonable as applied to the respondent's property, viz., that the property in question is located at the intersection of two heavily traveled thoroughfares where the traffic load has been rapidly increasing for the past two years; that property adjacent to and in close proximity to the property in question although zoned "L-O" on paper is in fact used for commercial purposes and is for all practical purposes commercial property; that the value of the property in question would have a substantially greater value if used for commercial purposes. Thus respondent has sustained the burden of producing evidence to overcome the presumption of validity accorded the Boise City Ordinance. Since Boise City failed to come forward with evidence to rebut when the burden shifted to it, it must bear the risk of non-production of evidence and its attendant consequences.

This Court in Herzog v. City of Pocatello, 83 Idaho 365, 363 P.2d 188 (1961), in considering a problem analogous to the one presented by the case at bar, phrased the issue to be decided in the following manner:

"The issue here presented is whether the evidence sustains a finding that appellant's action in denying respondents' requests was arbitrary, capricious and discriminatory. After careful consideration of the entire record, we feel that the evidence of discrimination in the various aspects as presented to the trial court sustains the findings of said court." 83 Idaho 365 at 373, 363 P.2d 188 at 192 (1961).

In the case at bar the record reveals substantial evidence supporting the findings of the district court. Furthermore, loss to a property owner caused by restrictions on the use of his property is to be considered in determining whether an ordinance is invalid in its application to a landowner's property. White v. City of Twin Falls, *supra*.

Even conceding that the zoning ordinance in question was a valid exercise of the police power of Boise City at the time of its enactment, and hence was not unreasonable at that time, a police regulation, valid when made may become arbitrary and confiscatory in operation by reason of later events. Abie State Bank v. Weaver, 282 U.S. 765, 51 S.Ct. 252, 75 L.Ed. 690 (1931). Since the record indicates that the property in question is situated at the intersection of two increasingly heavily traveled thoroughfares and that a traffic signal was installed because of the increase in traffic flow, that no residences have been built on either arterial, Cole or Ustick, in the vicinity of the intersection within the past two years, this is sufficient to show that the ordinance is arbitrary and confiscatory since these events (increase in traffic volume and commercial character of the area) have definite bearing on the validity of the ordinance.

Judgment affirmed. Costs to respondent.

McFADDEN, C. J., and SHEPARD and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

Although this road has been too-recently traveled before in Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 596, 605, 448 P.2d 209, 219 (1968) (dissenting opinion), I once again must dissent from an opinion which can only serve to enervate Idaho cities' plans to control their futures. Many of the relevant arguments and authorities have been set out in the *Ben Lomond* case, *supra,* and I will not reiterate that material here. There are only a few points which are especially worth noting about the majority opinion and its consequences.

The first is that this Court, in declaring this otherwise valid zoning classification "arbitrary and confiscatory," has more ruled on the desirability of a policy of planning than on the constitutionality of an or-

dinance. In so ruling, the Court has, in effect, adopted the role of a legislature and ignored two guiding principles of decision which control the power of courts to declare legislative acts unconstitutional.

"One is that courts are concerned only with the power to enact statutes, not with their wisdom. The other is that while unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint. For the removal of unwise laws from the statute books appeal lies, not to the courts, but to the ballot and to the processes of democratic government." United States v. Butler, 297 U.S. 1, 78–79, 56 S.Ct. 312, 325, 80 L. Ed. 477 (1935) (Harlan Fiske Stone, J., dissenting).

The same sentiment was as eloquently, if more concisely, stated by Justice Holmes,

"it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." Missouri, Kansas & Texas R. Co. v. May, 194 U.S. 267, 270, 24 S.Ct. 638, 639, 48 L.Ed. 971 (1904).

The majority opinion gives lip-service to the salutory principle that the actions of legislative bodies should be accorded great respect by courts in its discussion of the "presumption" that the zoning ordinance is valid. The reasoning, however, on this point is incorrect. The force of the "presumption" is that the original decision made by the City of Boise to zone this area "L-O" was correct. The action in the district court is essentially an appeal from this original decision of the City to zone in accordance with its master plan. If respondent wished to overturn the City's decision in a court, it should have built and transmitted a record at the level where the decision was made. As long as it is the rationality of the zoning commission decision which respondent attacks, it should present the factual basis upon which that decision was made, and then it could produce supplementary evidence to rebut that record.

Instead of following that procedure, wisely adopted by the legislature for review of the actions of state agencies, I.C. §§ 67–5215, 67–5216 [S.L.1965, ch. 273], the majority opinion suggests that the district court should become a supra-zoning board. The effect of this and other decisions will be to compel the cities of Idaho to bring all of the facts and knowledge which go into every zoning decision into courts to justify those decisions to judges. Each property owner who sees an opportunity to profit at the expense of his neighbors' and his community's property and aesthetic values may now be expected to challenge his zoning classification. Thus, the decision to zone an area a certain way will have to be made, not once by the organ of government chosen for the job under I.C. § 50–1201, but over-and-again by the courts.

Even if I were convinced that the City could be forced to support its decision without a record, I find little in what respondent has offered which would cause me to shift such a burden to appellant in this action. There appear to be two circumstances upon which respondent and the majority rely in arguing that the zoning ordinance must fail. The first is that there are other non-conforming property uses in the vicinity, and the second is that the property has a special, higher value if it is spot-zoned "C-2." Neither of these two facts, alone or in combination, is enough to support an arbitrary rezoning by a court.

The question raised by the existence of the other non-conforming uses in the vicinity has two answers. The first is that the property in question lies very close to the City boundary, and some of the general commercial property which lies near that of respondent is outside of the City's jurisdiction and thus not subject to the zoning ordinance. To say that the City cannot zone an area one way if it cannot reach *all*

the surrounding property, within or without the City limits, would be to hamstring hopelessly the power of a community comprehensively to regulate land-use within its borders. It would be like saying that Idaho has to allow gambling on all property contiguous to Nevada. To the extent that the majority opinion relies on the existence of unzoned commercial property outside the Boise city limits, it commits just such a folly.

The remaining non-conforming uses appear all to predate the zoning of the area "L-O." There will nearly always be such uses whenever a new urban plan, such as Boise's comprehensive plan, is put into effect. It is seldom possible to plan a city starting from the beginning; the planners must commence their work even though less than desirable "strip" commercial developments and other aberrant land uses have begun. Ultimately the non-conforming uses will cease to exist, and, unless a court has intervened in the interim, the area will take on the character assigned to it in the city's plan. Unless this is allowed to happen, a race may be expected prior to any annexation or other alteration in an area's zoning whereby land speculators will seek to avoid the law by beating the zoning commission to the punch. *See* Ben Lomond, Inc. v. City of. Idaho Falls, *supra,* 92 Idaho at 606–610, 448 P.2d at 220–224 (dissenting opinion).

A case decided in New Jersey only last July, Forte v. Borough of Tenafly, 106 N. J.Super. 346, 255 A.2d 804 (1969), is most instructive on this point. Tenafly chose, after years of commercial development on its fringes, to preclude all future retail development from the outlying portions of the city and restrict it to the central business district only. This was done as a part of a comprehensive land-use plan designed to stanch the rapidly progressing putrefaction of the core of the city. The New Jersey Court recognized that even though the respondent property owners in that case had lots in the midst of a retail business district and that the respondents

could not obtain land in the central business district for the supermarket which they had planned, the city's right to determine its own destiny was the determinative consideration. Tenafly's ordinance, as applied to the respondents in that case, was upheld as not unreasonable or confiscatory. That case, premised on a respect for a city's power and the realities of urban planning, indicates the correct path for this Court to follow.

The other factual foundation upon which the majority relies in its opinion, the special value of the property for filling station purposes, is equally unpersuasive. For one thing the evidence which respondent offered to support this contention is, in its best light, insubstantial. For another, such a fact is irrelevant.

A brief hypothetical may illustrate the weakness of this second foundation of the majority's decision. We might suppose that, instead of a filling station, respondent sought to have the property used as a stockyard and rendering plant. In order to support its position in the district court, respondent would produce much testimony by marginally qualified or qualified but unprepared "experts" to the effect that the property was peculiarly well situated to be a stockyard and rendering plant. As such, they would say, it would command a price of $40,000 while if it were restricted to uses for which it was zoned, it was only worth $10,000. Under the special value rationale of the majority the city would have no choice but to grant a variance in the zoning and allow a stockyard and rendering plant. Such would be the case even though the obvious planning purpose of zoning the area "L-O" in the first place could not but be frustrated by so "valuable" a use. Nor would it matter that the property values of the area landowners would be reduced from what they had been under the properly enacted zoning ordinance. Least of all would it matter that the social and aesthetic values sought to be obtained by the city through its comprehensive plan would be irredeemably lost.

But, it may be argued, a filling station is not a rendering plant. That is true, but a filling station may be only slightly less disruptive to a quiet neighborhood. A filling station is serviced by large, noisy tank-trucks. It is often open at night long after most businesses are closed. It is necessarily accompanied by exhaust fumes, odors from petroleum products, greasy dirt, and penetrating headlight beams. It is surrounded by loud engine, horn and warning bell noises. While a filling station may not, itself, generate much increased traffic, the ingress and egress therefrom provides a brake and tire-squealing, horn-honking cacophony as well as an increased risk of automobile accidents. The introduction of a gasoline service station into what is meant to be an area of quiet uses will most definitely damage the proposed character of the neighborhood.

The respondent's realization of a special value from the use of its property as a filling station will, therefore, occur at the expense of the City's plan for the neighborhood and of the property values of neighboring landowners which were predicated on the maintenance of the City's zoning scheme. The respondent, then, seeks to use its land, in a manner found to be unsuitable by the unit of government responsible, in a way which will injure the land of another or its value. This is nothing more or less than a nuisance. *See* Morgan v. High Penn Oil Co., 238 N.C. 185, 77 S. E.2d 682 (1953); Carney v. Penn Oil Co., 291 Pa. 371, 140 A. 133 (1928); *cf*. City of Tuscaloosa v. Standard Oil Co., 221 Ala. 670, 130 So. 186 (1930); National Refining Co. v. Batte, 135 Miss. 819, 100 So. 388, 35 A.LR. 91 (1924). *But see* White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778 (1959).

This is a taking of the value and enjoyment of respondent's neighbors' property. *For that taking there should be compensation as a matter of elemental justice.* This is where the opinion of the majority errs most grievously. In their preoccupation with the value of a gasoline station to the respondent they fail to appreciate larger concepts of value to an entire neighborhood and to the community which our ancient law of nuisance and our emerging law of zoning are designed to protect. They fail to understand that the appreciation of value which they are allowing Cole-Collister Fire Protection District to realize has been authoritatively determined to depreciate *all* other property affected. Under the majority's special value rationale, respondent is being presented a windfall at the expense of its neighbors and at the expense of the City's comprehensive plan. There is nothing in the constitutions of Idaho or the United States which would warrant, let alone compel, such a result.

The decision in this action, by requiring that the City defend its zoning decision in a trial *de novo*, gives too little respect to the competency of the City to control land use within its boundaries. It also works a manifest injustice by allowing respondent to realize a profit at the expense of neighboring landowners. I must, therefore, respectfully dissent.

On Denial of Petition for Rehearing

DONALDSON, Justice.

The appellant (Boise City) has submitted a petition for rehearing and urges that an "unwarranted" burden has been placed upon Boise City to prove that the erection of a filling station would interfere with the goals articulated by the applicable statutes and ordinances.

It is evident that appellant (Boise City) has misconstrued our opinion and we will therefore strive to make our reasoning as set forth therein, absolutely clear.

In our system of law and jurisprudence two distinct meanings can be denoted by the singular term "burden of proof." Firstly, "burden of proof" refers to the "risk of nonpersuasion of the trier of the facts."

> "Wherever in human affairs a question of the existence or nonexistence of a fact is to be decided by somebody, there is the possibility that the decider, or trier of the fact, may at the end of his deliberations be in doubt on the question submittted to

him. On all the material before him, he may, for example, regard the existence or nonexistence of the fact as equally likely—a matter in equipoise. If, now, the trier is operating under a system which requires him to decide the question one way or the other, then to avoid caprice that system must furnish him with a rule for deciding the question when he finds his mind in this kind of doubt or equipoise. Where the parties to a civil action are in dispute over a material issue of fact, then that party who will lose if the trier's mind is in equipoise may be said to bear the risk that the trier will not be affirmatively persuaded or the risk of nonpersuasion upon that issue." Fleming, James, Civil Procedure, § 7.6.

 The risk of non-persuasion of the trier of the facts *never* shifts throughout the various stages of the trial. Generally the party asserting the claim bears the "risk of the nonpersuasion of the trier of the fact." In the case at bar, Cole-Collister (plaintiff-respondent) bore the "risk of the nonpersuasion of the trier of the fact" that the zoning ordinance was arbitrary and capricious as applied to it. This risk it bore from the start of the trial to its end regardless of how many times the "burden of producing evidence" shifted. Cole-Collister bore the risk that it would lose the case if when all the evidence was in the trier of the fact was in doubt as to the validity of the ordinance.

 The concept of burden of proof can also refer to *"production of evidence."* At the beginning of the trial in the instant case, the plaintiff-respondent, Cole-Collister bore the "burden of proof" to show that the zoning ordinance in question was invalid. In order to do this the plaintiff-respondent (Cole-Collister) had to introduce evidence to overcome the presumption of validity attached to the ordinance. This presumption is not conclusive and may be overcome by clear and convincing evidence such as was presented by Cole-Collister in this case. White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778 (1959); City of Lewiston v.

Mathewson, 78 Idaho 347, 303 P.2d 680 (1956); Boise City v. Better Homes, Inc., 72 Idaho 441, 243 P.2d 303 (1952). Once the presumption of validity was overcome, the burden of proof shifted to Boise City to produce evidence tending to show that the erection of a filling station would in fact interfere with the goals articulated by the regulations in question. Having lost the aid of the presumption of validity attached to its zoning ordinance, Boise City still had an opportunity to show in fact, i. e., by producing evidence, that its zoning ordinance was valid. The burden placed on Boise City was by no means unwarranted. Boise City however produced little or no evidence, nor did it successfully discredit the evidence submitted by the property owner.

Rehearing denied.