**HERMAN GLICK REALTY CO., a corporation, Appellant,**

v.

**ST. LOUIS COUNTY, Missouri, Respondent.**

**No. 37861.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Oct. 26, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Application to Transfer Denied
Feb. 14, 1977.

---

David G. Dempsey, Shifrin, Treiman, Bamburg & Dempsey, St. Louis, for appellant.

Thomas W. Wehrle, County Counsel, Robert H. Grant, Associate County Counselor, Clayton, for respondent.

ALDEN A. STOCKARD, Special Judge.

This is an appeal by plaintiff from an adverse ruling in its action for a declaratory judgment that the "Non-Urban" classification of its land under the Comprehensive Zoning Ordinance of St. Louis County is void for the reason that such classification constitutes an abuse of discretion and infringes on various constitutional guaranties of the owner of the land. We reverse and remand with directions.

Appellant owns an unimproved tract of land consisting of 1.515 acres located on the northwest corner of Manchester and Mason Roads in St. Louis County. It has a frontage of 218.72 feet on Manchester Road and a depth along Mason Road of 268.75 feet. At this intersection Manchester Road is a four lane state highway with a large volume of traffic. Mason Road is a two lane county street referred to in the testimony as a "collector" street, and this intersection is one of the busiest in St. Louis County.

The land fronting on Manchester Road and to the west of appellant's land for a distance of approximately 600 feet is zoned for commercial use (C–2). The actual uses of this land are (1) a Wonder Bread outlet and distribution center, (2) an A & W Drive-in restaurant specializing in the sale of hamburgers, (3) a Long John Silver sitdown restaurant featuring fish, and (4) a drive-in Steak-N-Shake restaurant featuring hamburgers as its principal item. To the east across Mason Road there is a tract of land substantially smaller than that of appellant's that is zoned Non-Urban, but the tract adjoining it on the east is zoned Planned Commercial District (C–8) for use as a service station, and to the east of that it appears that the first tract is zoned Non-Urban and the second is zoned Planned Commercial District (C–8) for use as a barbershop. Across Manchester Road on the south side and extending westward from the intersection of Manchester Road and Barrett Station Road for approximately 3500 feet, with the exception of one tract which is vacant and is zoned Non-Urban, the entire frontage is zoned for commercial

or industrial use, but all the uses are commercial. The tract of land to the north and immediately behind appellant's land is zoned for a multi-family condominium development. It is thus apparent that appellant's undeveloped tract of land lies in a highly commercially developed area located on the corner of an intersection where there is a large volume of traffic.

Section 1003.107 of the Revised Ordinances of St. Louis County sets forth the "purpose" of the classification of the Non-Urban Zoning District as follows:

> "The 'NU' Non-Urban District of St. Louis County encompasses areas within which rough natural topography, geological conditions, or location in relation to urbanized areas creates practical difficulties in providing and maintaining public roads and public or public-utility services and facilities, and also encompasses areas in which significant non-urban uses have been established. The purpose of the 'NU' Non-Urban District regulation is to guide and coordinate development in the unincorporated portions of St. Louis County in order to secure the appropriate development of the physical environment * * * ."

Mr. John Baggs, the Director of Planning for St. Louis County, testified that the classification of Non-Urban "was applied to much of the land for which [in 1965] the Planning Commission and/or the Council did not foresee at that time a definite zoning category putting it into residential, industrial or commercial zoning," and that the classification had been referred to as placing land in "cold storage" or as a "holding zone." He also testified that appellant's land did not contain any of the physical conditions referred to in § 1003.107, and that in the development of the land there would be only "minimal" topographical problems which could be solved. He also agreed that Non-Urban zoning was not a classification of appellant's land for its *highest and best* use, and he stated that in his opinion it should be zoned "in the commercial category, that permitted a low intensity" type of use.

By reason of the limited permissible uses of land zoned as Non-Urban (which includes such activities as farming, hunting and fishing, churches, public or private schools, to name but a few), and the limitation in the zoning ordinances as to the minimum area on which the Non-Urban permitted activities may be operated, the only permissible uses of appellant's land are for the construction and operation of (1) a fire station (and one exists in the immediate neighborhood), (2) a nursery school (on one of the most highly traveled intersections in St. Louis County), and (3) a local public utility facility (for which no one contends there is a need). Even the use of Non-Urban zoned land for a dwelling house requires a minimum of three acres.

During the trial, over the objection of appellant, evidence was received that prior to the filing of this suit Metropolitan Ponderosa, Inc., by virtue of a contract to purchase appellant's land conditioned upon its being rezoned, applied to have the land rezoned to Planned Commercial District C–8 to construct thereon a steak house, or a "sit-down" restaurant. That application was denied by the St. Louis County Council. The record does not disclose the reason. There was no petition filed for a judicial review of that denial.

The trial court found that "Plaintiff filed a petition to rezone said parcel to 'C–8' Planned Commercial District for the purpose of constructing a 'Ponderosa' Steak House; " that "the highest and best use for this property is a low intensive [intensity?] use" and is "not NU Non-Urban," but the "particular use proposed by Plaintiff is not consistent with good planning practice because of site and traffic problems which would be generated by this particular use at peak hours on Manchester and Mason Roads, because of the proximity of the particular use to residentially zoned areas and because of the existence of the many eating establishments in the proximity." The trial court then concluded that "The decision of the St. Louis County Council * * * to deny Plaintiff's petition to rezone the sub-

ject parcel to a particular 'C–8' use, was not arbitrary nor unreasonable."

We deem it necessary to mention here that (1) it was not appellant who filed the petition to have the property rezoned to C–8 for the construction and operation of a steak house; that (2) this action brought by appellant is not an appeal from nor does it seek a review of the action of the St. Louis County Council in denying the petition filed by Metropolitan Ponderosa, Inc.; (3) there is no evidence of any "particular use proposed by plaintiff" for the land, and (4) the only evidence pertaining to that petition to rezone the property came in over the objection of appellant. It is apparent that the trial court did not rule on either of the two issues presented by the pleadings in this case; (1) that the zoning classification of Non-Urban as to appellant's land is illegal and void, and (2) that the court should direct that the land be zoned commercial, and particularly as C–2.

Reference should now be made to at least some of the commercial zoning provisions. There are seven commercial classifications designated C–1 through C–7. Appellant contends that his property should be zoned C–2 which encompasses areas "wherein may be located such stores and service facilities as will provide a wide range of those goods and services usually used, consumed or needed in the home or by individuals." It is provided that "it is the purpose of these [C–2] regulations to facilitate the establishment of conditions suitable for the operating of small business catering to the general public." There are nine categories of "permitted" land uses within this district, the first of which includes "Stores; shops; service facilities; including automatic vending facilities; markets; offices; recreational facilities, excluding drive-in theaters, *golf practice driving ranges and outdoor swimming pools;* restaurants and associated work and storage areas required to carry on business operations in which goods and services of any kind are offered for sale or hire to the general public on the premises * * * ."

The classification C–8 Planned Commercial District "encompasses areas wherein may be located developments and uses permitted in any of the other " 'C' Commercial Districts." It is then stated in the regulation, somewhat inconsistently, that the purpose is "to facilitate the establishment of combinations of developments and uses for which no provision is made in any other 'C' Commercial District." In this respect it establishes a separate classification for uses not otherwise authorized. It is also stated that another purpose is "the establishment of developments and uses [authorized by C–1 through C–7] where it would be appropriate to the area if it were to take place under approved site plans and conditions necessary to protect the general welfare." Mr. Baggs testified, in effect, that the St. Louis County Council does not approve a change to C–8 unless certain conditions (not set out in the regulations but presumably created by the Council for each tract of land) are met, and that those conditions "may be more restrictive or less restrictive than one of the requirements in a similar district [C–1 through C–7] for which that use is permitted" and that these conditions always call for a "preliminary development plan," but there is no explanation as to what this would include. As previously noted, we do not know why the application of Metropolitan Ponderosa, Inc. to have the land zoned C–8 for the purpose of constructing a steak house thereon was turned down. No reason is given by the County Council when an application is denied; a most undesirable practice. An applicant should, at least, be entitled to know the basis for an adverse ruling. Mr. Baggs, the County's only witness in this case, attempted to justify the action because of its effect on the traffic (but he admitted that his proposed use of the land for a small office building would have a greater adverse effect on traffic during peak hours), and because in his opinion another restaurant in the neighborhood was not needed, which is another way of saying that the restaurants already there should be protected from competition.

One further matter should be mentioned. During the cross-examination of Mr. Baggs he stated that the St. Louis County Council had "recently passed an ordinance approving a land use plan for St. Louis County." This clearly implies that a rezoning has occurred. But, he then added that under that plan it was "proposed" that appellant's land be zoned for "commercial development," and that the Planning Commission had "recommended to the County Council that [appellant's land] be commercial."

We cannot tell from this testimony whether the County Council has in fact zoned the land commercial, and if so in which of the eight categories it was zoned, or whether such zoning has only been proposed, but from the County's brief it is clear that it insists that this court should not disturb the Non-Urban classification.

■ A zoning ordinance may be valid generally, yet invalid in its application to a specific tract. *Flora Realty & Investment Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W.2d 771 (1952); *Huttig v. City of Richmond Heights,* 372 S.W.2d 833, 838 (Mo. 1962). The applicable rules are concisely stated in *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971) as follows: "Whether the classification and enforcement of a zoning ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional in its application to a specific property depends upon the evidence and the facts and circumstances of each case. * * * The legislative body has the duty to determine the use classification for any particular area. Unless it appears that the determination by that body is arbitrary and unreasonable, the court cannot substitute an opinion for the council's determination. If the council's action is fairly debatable, the court cannot substitute its opinion. The legislative body's enactment is clothed with a presumption of validity, and he would challenge the reasonableness of the ordinance as applied to specific property has the burden of proving unreasonableness." See also *Desloge v. County of St. Louis,* 431

S.W.2d 126 (Mo.1968); *Downing v. City of Joplin,* 312 S.W.2d 81 (Mo.1958).

■ It is apparent from the evidence that the St. Louis County Council has applied to appellant's tract of land a zoning classification which its only witness admits does not fit the physical characteristics of the land, apparently for the purpose of "holding" it in its undeveloped status without consideration of its relation to neighboring property or its best and highest potential use, and which, for all practical purposes, results in it not being available to appellant for any profitable use. This is further evidenced by the testimony that as presently zoned the land is worth $7,500. but if zoned for general sales or service commercial use the value would be $165,-000. As stated in *Tealin Company v. City of Ladue,* 541 S.W.2d 544 (Mo. banc 1976), the effect of zoning on value is not decisive, but "it is certainly an element to be considered, particularly in ascertaining the relationship of the zoning to the public welfare." *Huttig v. City of Richmond Heights,* supra at p. 840.

In *Huttig v. City of Richmond Heights,* supra at p. 841, the Supreme Court of Missouri quoted with approval from *Dowsey v. Village of Kensington,* 257 N.Y. 221, 177 N.E. 427 (1931) as follows: " 'Certainly an ordinance is unreasonable which restricts property * * * to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights.' " The court then cited numerous cases to the effect that property may not be so zoned as to prevent any effective use, that such a zoning is unreasonable and arbitrary, and that the effect of a zoning regulation which prevents all effective use is an unlawful confiscation.

The County has referred us to the recent case of *Tealin Company v. City of Ladue,*

supra, and it argues that in this case, as in the *Tealin* case, "there was a substantial amount of non-commercially zoned land within the vicinity of [appellant's] property." We assume reference is intended to be made to the fact that there are several other tracts nearby which are zoned Non-Urban. We consider this to be of almost no importance in view of the provisions of § 1003.107, previously set forth, pertaining to the physical characteristics of land which should be zoned Non-Urban, the testimony of Mr. Baggs that the classification has been used by the County Council as a "holding" device, and the fact that the physical conditions of appellant's land admittedly do not meet the Non-Urban classification. The County has also cited *Strandberg v. Kansas City,* 415 S.W.2d 737 (Mo.1967), as holding that one challenging a zoning ordinance has the burden to establish that the ordinance is unreasonable, arbitrary, in excess of authority, and a deprivation of property rights without compensation, and *Kempf v. City of Lee's Summit,* 504 S.W.2d 167 (Mo.1974), as holding that if the action of a legislative body in zoning property is fairly debatable the courts are not to disturb it. We agree with both cases, but for the reasons above stated, neither is applicable to the facts of this case.

■ Based upon our consideration of the facts and circumstances, not only as shown by appellant in meeting its burden of proof but as admitted in the testimony offered by the County, we conclude that the maintenance of the present Non-Urban zoning of appellant's tract of land bears no substantial relationship to the public health, safety, morals, or general welfare; that the public interest and welfare in maintaining the zoning classification of Non-Urban, if indeed any exists, is greatly outweighed by the demonstrated detriment to appellant; that the present zoning is so unreasonable and arbitrary that it infringes upon appellant's rights under the due process clauses of both the State and Federal Constitutions; that upon this record these questions are not fairly debatable; and that for these

reasons the zoning of appellant's property as Non-Urban is void.

This leaves the question of what the judgment of this court should be other than that the classification for zoning purposes of appellant's land as Non-Urban is void. Ordinarily it is not the function of the courts to prescribe what commercial use should be permitted on property. *Huttig v. City of Richmond Heights,* supra at p. 844. However, appellant contends that in view of the circumstances of this case this court should direct that its property be zoned Commercial C–2. The contention is not totally without merit and deserves further consideration.

■ Appellant's evidence clearly establishes that its land could properly be zoned C–2. It also presented evidence to the effect that the County actively discourages any commercial zoning except C–8, which purports to grant to the County Council almost unlimited authority to impose conditions as to each piece of property and to deny or grant an application for undisclosed reasons. The evidence indicates, and this came from the County's witness, that the application of Metropolitan Ponderosa, Inc. to have appellant's property rezoned C–8 was denied because of a minimal effect on traffic and to prevent economic competition with existing restaurants. This use of the zoning power to prevent competition is clearly an abuse of that power. *Forte v. Borough of Tenafly,* 106 N.J.Super. 346, 255 A.2d 804 (1969); *Lazarus v. Village of Northbrook,* 31 Ill.2d 146, 199 N.E.2d 797 (1964). It would be well for the zoning authorities to read carefully the comments in *Huttig v. City of Richmond Heights,* supra, concerning the consideration to be given to minimal traffic conditions. We necessarily must mention that the validity of the provisions of the zoning ordinance authorizing a C–8 classification, or the action of the County Council taken pursuant thereto pertaining to the application of Metropolitan Ponderosa, Inc. are not before us for decision in this case. Also, in view of the undisputed testimony of the County's witness that prior to

trial the County Planning Commission recommended to the County Council that appellant's land be zoned commercial, and that the County Council had "passed" an ordinance approving a land use plan in which it was "proposed" that the land be zoned for "commercial development," two questions are forcefully presented: Why was the trial of this case necessary, at least as to the issue of whether the Non-Urban classification should be retained, and why does the County now argue strenuously in its brief to this court that the Non-Urban classification should not be disturbed? On the other hand, notwithstanding the above circumstances, this court cannot presume arbitrary or unreasonable future action on the part of the County Council, and it has not yet, as far as the record shows, refused an application of appellant to rezone the land as Commercial C–2.

In these circumstances, with some reluctance, we conclude that we should rule only that the classification of appellant's land as Non-Urban is void, that appellant's application that its land be rezoned to commercial usage be granted, and that the matter be remanded to the County Council for proper classification.

The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment in accordance with the views here expressed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.