Edna E. KEMPF, Appellant,

v.

**CITY OF LEE'S SUMMIT, Missouri, et al.,**
Respondents.

No. 57558.

Supreme Court of Missouri,
Division No. 1.

Jan. 21, 1974.

Edward J. Essay, Jr., Lee's Summit, Donald E. Raymond, Kansas City, for appellant; Howell, Raymond & Raymond, Kansas City, of counsel.

Robert H. Markey, Edwards, Markey & Ely, Blue Springs, for respondents.

HIGGINS, Commissioner.

Appeal by plaintiff from adverse decision in action for declaratory judgment to have a zoning ordinance declared unconstitutional as applied to her property, asserting presence of question involving construction of the Constitution of the United States and of this state. Jurisdiction on that ground is, at most, arguable;[1] however, the case has been pending since December 12, 1971, and it is retained for decision in the interest of conserving time. See Order, Supreme Court en Banc, April 9, 1973.

Appellant contends that the court erred in not holding that respondents' zoning ordinance violated Amendment 14 of the United States Constitution and Article I, Sections 10 and 28 of the Constitution of Missouri "because exclusion of plaintiff's property from Class C–B zoning was arbitrary and unreasonable." Appellant argues: that the City unconstitutionally discriminated against her "by the fact that her property was the only property on the west side of U.S. Highway 71 By-Pass on which the City maintained the residential zoning classification"; that this zoning was so unreasonable and arbitrary that it constituted a confiscation of her property.

Appellant admits that the zoning ordinance in question is presumed to be valid and that she had the burden of showing it to be arbitrary and unreasonable in its application to her property.

The City of Lee's Summit, Missouri, is a city of the fourth class; the individual defendants are the mayor and members of the Board of Aldermen of the city.

Plaintiff is the owner of a tract of land in Lee's Summit, lying west of and abutting U.S. Highway 71 By-Pass; the tract

[1]. This case is an example of the difficulty in applying present criteria for determination of jurisdiction in the Supreme Court on the ground construction of the Constitution is involved. It would be desirable if jurisdictional criteria of Article 5, Section 3, Missouri Constitution, V.A.M.S., were more definitive.

consists of approximately three acres extending 918.4 feet in a north-south direction and extending west from the highway approximately 230 feet on the north and 100 feet on the south. Access to the property is by way of Columbus Street, an east-west street, at the north side and by an entranceway from the highway at the south side. To the north across Columbus Street from plaintiff's tract is "Valley Vista," a shopping center containing a grocery, barbershop, liquor store, real estate office, and drugstore; to the south is "Dog and Suds," a drive-in restaurant; to the west is some vacant land presently used for agricultural purposes, and "Orchard View," a residential subdivision in which the rear of five lots, improved with single-family residences, abuts without access to plaintiff's tract; to the east is U.S. Highway 71 By-Pass, a 4-lane, divided, limited access highway, carrying through traffic in the Kansas City area, with traffic counts on that portion north of Highway 50 for the average 24-hour period of 6,835 vehicles in 1968, 6,580 in 1969, and 8,465, including 1,570 commercial vehicles, in 1970. The land to the east across the highway is open with some duplexes and three single-family residences.

Lee's Summit adopted Ordinance No. 715, Comprehensive Zoning Ordinance, March 27, 1962. It placed plaintiff's tract and the properties to its north and west in District R-2 (duplexes).

Lee's Summit adopted Addendum No. 1 to Ordinance No. 715 September 7, 1965, by which was provided a new zoning classification, District C-B (controlled business district), and in which certain commercial uses were permitted in enclosed buildings, i. e., armories, assembly halls, retail bakeries, banks, barber and beauty shops, gymnasiums, small animal hospitals, lodge halls, restaurants, cafes or cafeterias, business schools, retail stores, shops and markets, studios, wholesale sales offices and sample rooms, and motels.

When Addendum No. 1 was proposed, District C-B included all property adjacent to and within a distance of three hundred feet from the right-of-way line of Highway 71 By-Pass from Colburn Road on the north city limits to U.S. 50 on the south, excepting properties then zoned M-2, M-1, C-2, and C-1; plaintiff's tract was within the proposed District C-B.

Public hearing on Addendum No. 1, as proposed, was held before the zoning board May 3, 1965; the zoning board recommended approval.

Public hearing on proposed Addendum No. 1 was held by the Board of Aldermen May 25, 1965, and the matter was taken under advisement.

Public hearing on Addendum No. 1 was resumed by the Board of Aldermen, June 1, 1965. "Attorney Tom Walsh appeared in representation of a group of property owners in the Orchard View subdivision (having also represented them at the public hearing May 25th in voicing objection to the C-B strip abutting their lots) to present an appeal for consideration on the part of the council not to approve the C-B zoning abutting Orchard View subdivision, due to the fact that the 300 foot distance would extend over onto their properties which is presently zoned R-2, and voiced their objections to the types of business that C-B zoning would permit and which could be a nuisance, detrimental and deteriorating factor to the value of their property. After considerable discussion," and upon motion, "the triangular strip of land abutting Orchard View subdivision on the East and extending to U.S. Highway 71 By-Pass" was deleted from District C-B. Plaintiff's tract lies within the deleted area and remained in District R-2 (duplexes).

On January 12, 1971, plaintiff and an agent for U-Totem Stores filed application to rezone plaintiff's tract from District R-2 to District C-B. On March 2, 1971, the owners of 27 per cent of the property within 185 feet of plaintiff's tract having filed proper protest to the proposed change, the Board of Aldermen denied plaintiff's application.

According to plaintiff's son, Ernest W. Kempf, Jr., his mother and father purchased land which included the tract in question in 1943. They farmed the land until around 1955 when some of it was condemned for U.S. Highway 71 By-Pass. Mr. Kempf described the property east and across the highway as "rental type property, duplexes. * * * they backed these up to the highway. They had sufficient room to run a street so that they could face their houses away from the highway." The area east of the duplexes was developed for single-family residences with the duplexes as a sort of buffer. On the west side of the highway and south of subject tract was a commercial enterprise (Dog and Suds), and to the west is Orchard View subdivision consisting of single-family dwellings. Five lots so developed abut subject tract.

Merle Decker, a Lee's Summit realtor specializing in commercial properties, felt, with respect to R–2 development on subject tract, that "It would be tight. There would have to be a frontage road put in behind the highway right of way and then if you had your normal setback there [it] would be pretty tight for a backyard." He had worked for the sale of subject property for some ten years and the interest he had received was for location of businesses. He had an inquiry for a Dog and Suds and he located it on the property south of plaintiff's property. He also had inquiries from 7–11, Jerry Lewis Theatre Franchise, Townley Hardware, and U–Totem Stores. He could not interest anyone in subject property for residential development; however, he had made no attempt to solicit interest in the property for duplex purposes. Mr. Decker's inquiry from U–Totem indicated interest in the purchase of the property for $27,900, contingent upon securing zoning reclassification for commercial purposes; value of the tract for duplex development would be about $5,000.

Larry L. Jones, an engineering supervisor with Western Electric, owns a residence with a back yard abutting subject property. He purchased his property in 1964 at a time when the only vacant lot in Orchard Hills subdivision was immediately south of him. All developments were single-family residences. Prior to his purchase, he inquired of the zoning of property immediately to the east and learned it was in District R–2. He protested the change of zoning of subject property to District C–B in 1965, and the application for rezoning in 1971. "* * * we felt that the Council had in the past, through its zoning, provided a buffer zone of duplexes or at least multi-family dwellings between R–1 and any kind of commercial use. * * * it was brought out at those hearings that we felt that the inclusion of commercial property next to our property would decrease the value of the land and any commercial usage at all would constitute a nuisance from noise and traffic, dirt, lights, and public use, in general, next to our land." He would not object to duplex development on subject tract.

Ralph Hall was also an engineering supervisor at Western Electric and a resident in Orchard View. His property also abutted plaintiff's tract. He purchased his home in 1964 after inquiry to determine the zoning in his subdivision and on adjacent property. He also signed the 1971 protest to plaintiff's application for change of zoning. He felt "that businesses adjoining my property would greatly restrict the use of my property by myself and family. * * * There would be a matter of privacy for me and my family and my neighbors; there would be objections from the glare of lights, from business signs, parking lot floodlights and noise from cars coming in and out of the businesses; screeching tires; revving their engines and slamming doors and such. There would be objection from possible smell and odors from the trash, possible burning of trash and if there were restaurants or drive-ins, cooking odors. There would be a vast increase in the amount of litter * * * and also possible garbage * * *. That could be a health hazard from the standpoint of attracting rodents * * * you

have got the potential for armed robbery * * *." Commercial use of subject property would decrease the value of his property.

■ Whether a zoning ordinance will be held invalid depends upon the circumstances of each case. Strandberg v. Kansas City, 415 S.W.2d 737 (Mo. banc 1967); Huttig v. City of Richmond Heights, 372 S.W.2d 833, 842[7] (Mo.1963).

■ In keeping with that premise, the circumstances and evidence in this case have been stated in detail because they demonstrate that the City's action with respect to the zoning of plaintiff's property is "reasonably doubtful" or "fairly debatable," in which cases this court cannot substitute its opinion for that of the City's Board of Aldermen. Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 777[1] (banc 1952); Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483, 485 (1948); State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934, 938 (1951); Ewing v. City of Springfield, 449 S.W.2d 681, 689–691[14–17] (Mo.App. 1970).

■ One factor urged by plaintiff is the difference in value of her property under the different zoning classifications; however, as recognized by her, such is but one element for consideration and is not controlling in this type of case. Strandberg v. Kansas City, supra, 415 S.W.2d l.c. 743[7]. And, in contrast to other properties in the area abutting the highway, there is no buffer zone of duplexes between plaintiff's tract and the abutting single-family dwellings. Cf. Huttig v. City of Richmond Heights, supra.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.